[Civ. No. 307. Fifth Dist. Mar. 25, 1964.]

FRED RICH, Plaintiff and Respondent, v. BENNETT SILVER, as Executor, etc., Defendant and Appellant.

Ara Ohanesian for Defendant and Appellant.

Staniford, Harris & Loomis and John E. Loomis for Plaintiff and Respondent.

BROWN (R.M.), J.—The appellant appeals from a judgment rendered in a declaratory relief action, wherein it was decreed that certain personal property was held in joint tenancy and that by the death of one of the joint tenants, Flora M. Rich, her interest in said personal property survived in the respondent. The appeal is based on an agreed statement on appeal wherein it is conceded that the respondent and the deceased were husband and wife holding certain real estate as joint tenants and other property and the personal property described as the Izquierdo and Owensby Notes and a mutual fund investment as joint tenants.

An interlocutory decree of divorce was entered on September 1, 1961. Between that date and October 17, 1961, the date of the decedent's death, Mrs. Rich had deeded her interest in the joint tenancy real property to a third person and had taken back a deed and become a tenant in common and that realty is not now the subject of this appeal.

After the death of Mrs. Rich the respondent brought an action in declaratory relief with reference to various properties and this appeal is only from that portion of the judgment referring to the property that was in joint tenancy.

It is contended by the respondent that upon the death of the decedent he survived as joint tenant and the sole owner of the Izquierdo and Owensby Notes and the mutual fund investment. The only evidence presented and received by the court during the trial of the declaratory relief action consisted of a copy of the interlocutory decree of divorce and a partial transcript of said proceedings pertaining to the stipulations of the attorneys regarding the disposition of the property interests of the divorce litigants.

The court found that the parties were owners as tenants in common of the real estate but that the respondent was the surviving joint tenant of the Izquierdo and Owensby Notes and the mutual fund investment. It is from this portion of the judgment that the appellant appeals.

The portions of the oral stipulation entered into in open court in the divorce action pertinent to this appeal are: Mr. Ohanesian, attorney for Flora, stated: "... and specifically that the various notes, trust deeds and loans outstanding shall be regarded as the property of the parties to be shared equally by each." The attorney for respondent, Mr. Theusen, stated: "That all of the notes and deeds of trust be placed in the hands of a bank or some other collector for the purpose of collecting the sums due with instructions to the

institution, or the bank, or whoever it might be, to pay one-half of the collections to each party less the expenses of collection, . . .''

With reference to the real property, it was stipulated by respondent's attorney, ''Of course, the joint tenancy property, as far as the real property is concerned, it may remain in joint tenancy.'' Mr. Ohanesian said, ''Mr. Theusen, I was wondering, should we not stipulate that this may be converted into a tenancy-in-common?'' to which Mr. Theusen replied, ''I don't think this court can make such an order. Any one of us can terminate it easily enough, but I don't think the court can make an order on it even by stipulation. I think that is going to have to be done by us afterwards.''

The interlocutory decree of divorce provided (a) that each party owned a one-half interest as joint tenants in the real property; (b) that the Izquierdo and Owensby loans, as well as three other loans were awarded and assigned to both parties in equal shares and that the notes be deposited with some banking institution for collection, with instructions that all collections, recoveries and interest be divided equally between the parties; and (c) that the mutual fund investment was awarded and assigned to the parties in equal shares and to be sold as soon as practical.

It is notable that respondent, who was present in court at the time the attorneys voiced the terms of the stipulation to the trial judge, expressly approved these terms.

We think that the stipulation itself was sufficient to show that the parties intended for the Izquierdo and Owensby Notes and the mutual fund to be converted from joint tenancy property to tenancy in common. This can be done pursuant to section 158 of the Civil Code by the actions of the parties.

The fact that the decedent immediately changed the joint tenancy real property into tenancy in common indicates that she was well aware of what went on in court, believed that all joint tenancies had been broken save the joint tenancy realty, and that it was necessary for her to take this action.

We think it can easily be ascertained from the stipulation and actions of the parties that it was the intent to convert the joint tenancy property to tenancy in common. As was said in *Wardlow* v. *Pozzi*, 170 Cal.App.2d 208 at page 210 [338 P.2d 564]: ''There can be no question but that a joint tenancy may be terminated by express agreement be-

tween the joint tenants and an agreement between the tenants which, although it does not expressly terminate the tenancy, is inconsistent by its terms with one or more of the four essential unities of a joint tenancy will also be adjudged to be a severance thereof. (8 Hastings L. Journal 294.) Therefore, any interference with the right of survivorship by the terms of the agreement will sever the joint tenancy relationship.''

The joint tenancy is terminated where the parties specifically provide by agreement that if either of them died the interest of that one should not go to the survivor but to the daughter. (*McDonald* v. *Morley*, 15 Cal.2d 409, 412 [101 P.2d 690, 129 A.L.R. 810]; also see *Siberell* v. *Siberell*, 214 Cal. 767, 771 [7 P.2d 1003].)

It is interesting to note that in the *Wardlow* v. *Pozzi* case, *supra*, the court also added: ''Finally, it is hard to see how two persons in domestic difficulties, and desirous of settling their domestic problems as well as those relating to property, would have intentionally entered into an agreement such as the one before us which would have left the bulk of his or her estate to the other.'' (P. 211.)

So, here, it is difficult to envisage Fred and Flora Rich entering into a stipulation in open court, during the course of a contested divorce action, providing for the division of numerous items of personalty and several parcels of realty, yet intentionally leaving two valuable notes, secured by deeds of trust, and an investment in a mutual fund in joint tenancy, subject to the absolute right of survivorship in one in the event of the death of the other.

In the agreed statement on appeal it is conceded that the only evidence presented and received by the trial court consisted of the interlocutory decree of divorce and the partial transcript of the divorce proceedings pertaining to the stipulations regarding disposition of property interests; and that no oral testimony was adduced. It is therefore obvious that the trial court made its determination of the intent of the litigants in the divorce action from the terms of the stipulation and decree. This court is not bound by the interpretation placed thereon by the trial judge, but must make the final determination in accordance with law.

Stipulations are further covered in *Morrow* v. *Morrow*, 40 Cal.App.2d 474, 485 [105 P.2d 129], as follows: ''We may now consider the subject specifically under another phase, namely, estoppel. 'As a general rule, however, one may be

estopped by an agreement or stipulation made in a judicial proceeding. .... The case for estoppel by stipulation is greatly strengthened, of course, where the stipulation has been acted upon and the adverse party would be injured if it were not given effect.' [Citations.] Evidence upon issues in a case may be limited in accordance with a stipulation of the respective parties. [Citation.] A husband and wife in a divorce proceeding agreeing to an amount to be paid by the husband as support and maintenance are estopped in a subsequent proceeding from denying the scope given by a decree upon the stipulation. [Citation.] In *Dean* v. *Dean*, 136 Ore. 694 [300 P. 1027, 86 A.L.R. 79], the parties entered into a valid contract for settlement of property rights. A decree based upon the agreement was made. The husband acquiesced therein by making payments in accordance therewith. Subsequently he instituted an action to set aside and vacate all of the decree except the part granting a divorce. At page 1029 [300 P.], the court said: ' "A party cannot invoke the jurisdiction and power of a court for the purpose of securing important rights from his adversary through its judgment and, after having obtained the relief desired, repudiate the action of the court on the ground that it was without jurisdiction. The question whether the court had jurisdiction either of the subject-matter of the action or of the parties, is not important in such cases. Parties are barred from such conduct not because the judgment is conclusive as an adjudication, but for the reason that such a practice cannot be tolerated." (*Bledsoe* v. *Seaman*, 77 Kan. 679 [95 P. 576], quoted in 3 Freeman on Judgments, [5th ed.], p. 2963.)' "

(See also *Steele* v. *Steele*, 132 Cal.App.2d 301 [282 P.2d 171], and *Bordin* v. *Bordin*, 193 Cal.App.2d 132 [13 Cal. Rptr. 837].)

 While the stipulation is weak with reference to the mutual fund investment, we think the intent of the parties applied to it the same as to the other joint tenancy property.

Respondent has relied on *Hammond* v. *McArthur*, 30 Cal.2d 512, 516 [183 P.2d 1], which held that joint tenants may contract with each other concerning the exclusive possession and division of income, but the court further added, "... this will not necessarily terminate the joint tenancy."

 By the very terms of the pertinent provisions of the interlocutory decree of divorce, there was a contemplation that the proprietary interests of respondent and the decedent in the notes, loans, trust deeds and mutual fund investment

would be alienated and liquidated and clearly indicating the absence of any intention to preserve the attribute of survivorship inherent in the original relationship of joint tenancy set forth in the notes and the investment fund, and thus there was an actual violation of the ''unities'' of the joint tenancy relation.

Mere informal understandings are sufficient to accomplish transmutation. (See *Title Insurance etc. Co.* v. *Ingersoll*, 153 Cal. 1 [94 P. 94], and *Tomaier* v. *Tomaier*, 23 Cal.2d 754, 757 [146 P.2d 905].)

The sum total of all the provisions in the interlocutory decree of divorce and the stipulation manifestly established the intent on the part of the respondent and the decedent that they were also parting company in respect to all their assets as set forth in the decree by division of the bank accounts, to the provisions relating to notes, loans and the mutual fund investment.

The judgment is reversed.

Stone, Acting P. J., concurred.

Conley, P. J., deeming himself disqualified, did not participate.