58 Cal.Rptr. 83]

[Civ. No. 11328. Third Dist. Apr. 10, 1967.]

ALPHA JO SWAIN, Plaintiff and Appellant, v. THOMAS E. SWAIN, Defendant and Respondent.

(1)

Changaris, Trezza & Ithurburn, Fred B. Ithurburn and Malcolm A. Misuraca* for Plaintiff and Appellant.

Manwell, Manwell, Ashburn & Hogan and Paul M. Hogan for Defendant and Respondent.

PIERCE, P. J.—This appeal is by the wife from an order by the trial court denying a motion to set aside an order vacating a portion of a divorce decree which declared defendant husband to be the father of a child, Diana. The record discloses he was not the natural father of the child nor had he adopted her. Grounds of the vacating order were that the court in originally making a declaration that Diana was the child of defendant had acted in excess of jurisdiction. Stated broadly, that is the sole question before this reviewing court.

The question, more specifically stated conversely, is an extremely compound one: It is:

(1) where a plaintiff wife makes a perjurious allegation in

*Attorney Misuraca was not attorney for plaintiff in any of the proceedings in the trial court.

a verified complaint for divorce declaring a child not the child of the marriage to be one, and

(2) where the wife obtains a so-called ''appearance and waiver'' from her husband in which the child is not even mentioned, and

(3) where an officer of the court, appointed for that purpose, investigating, finds out from the parties that the child is not the child of the marriage, and has not been adopted by the husband and so states in a report submitted to the court, and

(4) *where said report is read and considered by the court and filed as a part of the record and the truth of the matters stated therein is never challenged, and*

(5) where the court at the hearing of the divorce forgets that the child is not the child of the parties and is encouraged so to forget by the wife (the husband not being present or represented) who repeats her statement that the child is that of the marriage and the court is thereby induced to sign a decree so finding, and

(6) where a year later the wife's attorney presents a final decree (in which the false statement is effectually compounded by repetition) to a successor judge who signs said decree, and

(7) where more than 6 months elapse before the husband moves for, and the trial court grants, an order vacating those portions of the decrees finding the husband to be the father of the child,

must a stepparent adoption thus created in absentia by misoperation of law be perpetuated by this court? The majority of this court holds that it need not and will affirm the judgment of the court below.

The appeal is upon (1) a clerk's transcript which includes the probation officer's report, and (2) the testimony taken at the hearing of the divorce. The facts before us on appeal show the following:

On April 16, 1962, Alpha Jo Swain filed a verified complaint alleging *inter alia*: ''That there are two minor children as the issue of said marriage, Shirley J. Swain and Diana L. Swain.'' She also alleged that defendant should be ordered to pay to plaintiff for the support of the minor children $156.90 per month until the entry of the final decree, $50 per month for each child thereafter. The complaint also alleged that plaintiff and defendant were married January 17, 1953, and

had separated November 15, 1959. (The separation was thus over two years before the divorce action was brought.)

On April 19, 1962, there was signed, acknowledged and filed a statement by defendant Thomas E. Swain asserting that he "appears," that he "admits service of copy of the summons and complaint," and "stipulates that the within action may be heard without further notice to defendant, on the default calendar or otherwise." At this point it should be noted defendant does *not* admit the allegations of the complaint, therefore he does not admit paternity of Diana; he does *not* even state that he has read the complaint; he does *not* consent that his default be taken. He was not represented by an attorney.

On May 10, 1962, upon the order of the late Honorable Arthur Coats, then Judge of the Superior Court of Sutter County, the assistant probation officer investigated the status of the children and submitted his report to the judge. The report was filed and is a part of the clerk's transcript before us on this appeal. The report is based upon information given by *both the plaintiff and the defendant.* Pertinent here are the following statements: "There was one child born the issue of this marriage: Shirley Jean, age eight years. *Plaintiff also has a child, Diane* [Diana] *Lynn, age thirteen years, from a previous marriage; Diane uses the name of Swain although she has never been legally adopted by the defendant.*" (Italics added.)

On May 11, 1962, Judge Coats signed a statement attached to the report. It states: "I have read *and considered* the foregoing report of the Probation officer." (Italics supplied.) Presumably copies of the report were made available to plaintiff, her attorney and to defendant before the divorce was heard.

The transcript of the testimony taken when the interlocutory decree was heard on May 14, 1962, is a part of the record brought before this court.[1]

Swain did not appear at the hearing. Plaintiff and her witness appeared with plaintiff's attorney. The following questions and answers are set forth in the wife's testimony: "Q. You and Mr. Swain have two children, is that correct? A. That's right. Q. Those children are both in your custody and

[1]It is to be noted that this transcript was not before Judge Hauck when he made his order vacating the interlocutory and final decrees of divorce on June 15, 1965. It was prepared thereafter and submitted to this court at the request of the wife's attorney.

6

control at this time? A. That's right. . . . Q. Mr. Swain is in the United States Air Force stationed at Beale Air Force Base? A. Yes. Q. Do you get from him now $156.90 a month, or get it from the Government, yes? (No answer.) Q. What you are asking the Court so far as support of the children is that he allow you this amount of money for the period of one year, at which time the allotment would stop and you want a Court order that he pay $50.00 a month for each child? A. That's right.'' The court then asked whether he was out of the service at Beale and the attorney answered: ''He won't be out of the service, but part of this $156.90 she is getting is for her, and they won't stop the allotment until the final decree is entered.[2] So when the final decree is entered, we would like the order just to say that she get $50.00 a month for each child. THE COURT: Very well.''

One matter absent from the reporter's transcript is as important as the testimony contained therein: the report of the probation officer is mentioned but the (then and now) undisputed fact contained therein that the child Diana was neither the natural nor adopted child of defendant husband was not disclosed to the judge. *On the contrary, it was withheld from the judge who was expressly requested to find Diana to be the child of the parties, and to make allowance for her support beyond the period when there was any legal obligation of support by Swain.* It will be noted that there is, to use Walter Lippmann's polite expression, a sizeable ''credibility gap'' between Mrs. Swain's statement to the probation officer regarding Diana's paternity on the one hand and her complaint allegation and later testimony (led by her attorney) on the other hand. The significance of this will be discussed below.

On May 15, 1962, the wife's attorney prepared, the court signed and there was filed an interlocutory decree. It contains two references to Shirley J. Swain and Diana L. Swain, ''minor children of the parties hereto,'' gives custody to plaintiff and $156.90 for their support until the entry of the final decree and thereafter $50 per month each ''until each of said children reaches the age of majority or until the further order of any court of competent jurisdiction.''

---

[2]There was nothing reprehensible on the part of Swain in permitting his wife to collect an allotment from the government which included an allowance for Diana. Until the divorce became final that allowance is payable to a stepchild by the government as a matter of law. (37 U.S.C.A., § 401.) Thus, if all that the wife originally sought by her perjury was the government allotment the deception practiced was unnecessary.

A final judgment of divorce was entered May 15, 1963, by Honorable John G. Hauck as Superior Court Judge of Sutter County, who had succeeded Judge Coats upon the latter's retirement. So far as the record indicates it was filed without affidavit (Cal. Rules of Court, rule 233). It provided that the provision of the interlocutory decree wherein it made provision for custody and support of the children be made binding to the same effect as if therein set forth in full.

On May 21, 1965, Swain, then represented by an attorney, noticed a motion which included as a ground that the court had acted in excess of its jurisdiction in the interlocutory and final decrees in declaring Swain to be the father of Diana.[3]

On June 15, 1965, Judge Hauck issued an order setting aside the provisions of the interlocutory and final decrees relating to the parentage and support of Diana upon the ground the court had acted in excess of jurisdiction.

The former Mrs. Swain moved that this order be vacated, and as stated, has appealed from the order denying this latter motion.

█ It is, of course, hornbook law, that a stepfather's liability to support the child of his wife by a former marriage ordinarily ends in the absence of an adoption when he and the mother are divorced. (Civ. Code, § 209; *Clevenger* v. *Clevenger,* 189 Cal.App.2d 658, 665-666 [11 Cal.Rptr. 707, 90 A.L.R.2d 569]; *Anderson* v. *Anderson,* 214 Cal. 414 [5 P.2d 881].) The late Judge Coats must be assumed to have been aware of this rule. This leads to an inevitable conclusion: that when he signed the interlocutory decree, after having heard Mrs. Swain give false testimony (in response to a leading question by her attorney) that Diana was the child of her marriage to Swain, Judge Coats had forgotten that both Swain and Mrs. Swain had informed his probation-officer-investigator who had informed him that that statement was not true.

When discussing the legal principles involved on this appeal, we keep in mind both the nature of the probation

---

[3]The affidavit accompanying the motion is not a model of draftsmanship. It alleges only by indirection that Swain is *not* the father of Diana by referring to the report of the probation officer. It must be added, however, that the record shows the sufficiency of the affidavit was not challenged, the motion was unopposed, and the fact Swain is not the father of Diana has never been disputed. In fact, Diana was born four years before Swain and Alpha Jo Swain were married. Also alleged in Swain's supporting affidavit—and it is a fact which is undisputed—after the dissolution of the Swain marriage, Mrs. Swain again married.

officer's report in domestic relations proceedings and the status of the probation officer himself in making it. In 1951 the Legislature created in Los Angeles and San Francisco Counties new ministerial officers of the court called domestic relations investigators whose duty it is to investigate and report "all pertinent information as to the care, welfare and custody of the minor children of the parties to a divorce action." It is provided that the report of such officers may upon stipulation be admitted as competent evidence to all matters contained therein. The investigator is required to be present at the trial and can be called to testify. (Code Civ. Proc., § 263, Stats. 1951, ch. 1360, p. 3275.) The old juvenile court law had had a similar provision giving county probation officers similar duties and powers (Welf. & Inst. Code, § 638.1, Stats. 1949, ch. 322, p. 601), and this has been carried over without change into the new juvenile court law (Welf. & Inst. Code, § 582, Stats. 1961, ch. 1616, p. 347). Stipulation as a condition to consideration of said report is not mentioned.

These reports like those of the domestic relations investigators have the force of evidence. (*Forslund* v. *Forslund*, 225 Cal.App.2d 476, 494, 495 [37 Cal.Rptr. 489].) As we see it, however, a significance attaches to these reports beyond the evidence of an ordinary witness. They are, of course, evidence, but they are more than that. Under the statutes cited the probation officer becomes, in a domestic relations proceeding, a special arm of the court to investigate the status of the children and report. True, the statements in the report may be challenged; the officer may be examined and cross-examined. But, as regards undisputed portions of the report, the officer is performing a function which a juvenile court judge might perform himself or even appoint a referee to perform. It is as though the court itself has made the investigation and had obtained the information. The trust is two-pronged: (1) we analogize *uncontested facts* to facts found by the court itself; (2) a party to the action, reading the report has, and should have, the right to rely upon acceptance of such facts as official pronouncements—again, as though they were court found. Certainly that should be so where facts in the report are unchallenged and unchallengeable.

These considerations lead us to the conclusion, first, that no judicial estoppel exists here. We concede the rule of judicial estoppel by agreement, i.e., that when two spouses have stipulated to a fact upon the basis of which the court acts, the other party may not invoke the jurisdiction of the

court to deny the agreement. (*Rich* v. *Silver*, 226 Cal.App.2d 60, 64-65 [37 Cal.Rptr. 749].) There was no stipulation or agreement here that Diana was Swain's child. Appellant equates the so-called "appearance and waiver" with such a stipulation. It was not. Swain did not agree therein that Diana was his child either by birth or adoption. He did not even agree that his default might be taken. His stipulation, as we read it, "that the within action may be heard . . . on the default calendar" was no more than a stipulation that his wife might obtain an uncontested divorce.

In the California system of code pleading no such pleading as an "appearance and waiver" is recognized. Permissible pleadings by a defendant are a demurrer, answer, cross-complaint and demurrer to the answer to a cross-complaint. (Code Civ. Proc., § 422.) Perhaps in realization that procedural code provisions were enacted in a generation antedating the prevalence of uncontested divorces, i.e., divorces which are not truly adversary proceedings, the so-called "appearance and waiver," would and should be recognized. It does not follow that such a pleading, if it can be called such, should be accepted as sufficient to effect a "stepchild" adoption in absentia. We have stated that the pleading did not stipulate to the fact of natural or adoptive parentage. Moreover, it did not even consent that a default be taken. So far as the record before us shows, no default *was* entered and perhaps none could have been since there is no proof as to where the complaint and summons were served or memorandum endorsement as required by Code of Civil Procedure section 670. In any event, of course, no divorce could have been granted by default. (Civ. Code, § 130.) Here, even though Swain's acknowledgment that he had received a copy of the complaint should be deemed an admission that he had read it, including the part which untruthfully alleged Diana was a child of the marriage, there followed before any hearing of the divorce a declaration by both the wife and husband to the court's investigator, the probation officer, that Diana was not Swain's child, the probation officer had so informed the court, and the record was set straight. The court had once recognized, then forgotten, the fact, and the judge's forgetfulness was aided by the unilateral fraud of the wife. She, with the aid of her attorney, "unstraightened" the record. The husband was not *in pari delicto*. On the contrary, as we see it, he had a right to assume that the court would act upon the knowledge obtained from the report of the court's own officer, not on the perjury

of the wife's complaint compounded by her perjured testimony. There was no estoppel by agreement.

Still to be determined is whether Swain was entitled to attack the decree collaterally by a motion to modify made two years after the entry of decree. Right to such attack is limited to extrinsic fraud or mistake *and to defects appearing on the face of the record.* (See 3 Witkin Cal. Procedure (1954) Attack on Judgment in Trial Court, Judgment Void on its Face, § 65, p. 2117.) It is stated in 3 Witkin (*idem., p.* 2047) under the caption "Lack of Jurisdiction Shown by Record," "A judgment 'void on its face' may be collaterally attacked. This is another way of saying that the presumption of jurisdiction is overcome when the defects may be shown without going outside the 'record' or '*judgment roll*' including the pleadings, proof of service, findings or verdict, and judgment. . . ." It will be noted that "judgment roll" has been used by Witkin synonymously with "record." (See *Borenstein* v. *Borenstein*, 20 Cal.2d 379, 381 [125 P.2d 465] ; *Johnson* v. *Hayes Cal. Builders, Inc.*, 60 Cal.2d 572, 576 [35 Cal.Rptr. 618, 387 P.2d 394]. But see Witkin, *New California Rules on Appeal* (Jan. 1944) 17 So.Cal.L.Rev., p. 79, at p. 104.) Unless there is magic in semantics we cannot accept the rigidity of the so-called "judgment-roll" rule and unreasoningly apply it here. This appeal concerns a judgment either valid or void (in part) because of lack of subject-matter jurisdiction. A court has no power to declare a child not the child of a defendant, either by birth or adoption, to be one, and no power to saddle the nonfather with the support of such child until her majority or emancipation, i.e., it has no such power when nonparentage appears on the face of the record. On the other hand, when the question of parentage or adoption is an issue properly litigated with both parties afforded a fair and equal chance to present evidence, the court does have jurisdiction to decide the issue. The words "judgment roll" are not an open sesame conjuring up the solution to whether presence or lack of subject matter jurisdiction appears "on the face of the record"—not in that part of domestic relations proceedings applicable to children. The facts in the report of the domestic relations officer affirmed and accepted by the parties, read and considered by the court, and filed as a part of the record do present the answer. The report is, as we have shown, *sui generis*. It is *inter alia* a means by which the court, acting through a statutorily created agency, ascertains the existence of matters upon which

its subject matter jurisdiction depends. ▉ Moreover, in this particular case, and the same would be true in every case where a divorce is granted after an ''appearance and waiver,'' *there is no judgment roll* as defined by statute.[4] Therefore, if there is to be any record at all comprehensible on collateral attack, the report mentioned must be deemed a part thereof. (Appellant must have so regarded it. She brought the report up as a part of the clerk's transcript on appeal.) The ''permissible pleadings'' portion of Code of Civil Procedure section 422 has not been changed since 1907. The judgment roll definition in Code of Civil Procedure section 670 has not been changed since 1872. Yet in the period of nearly a century which has intervened a whole system of both procedural and substantive law respecting domestic relations and particularly uncontested divorces has been created in which the report of the probation officer as it relates to child welfare has become an integral part. To keep apace, it should be deemed a part of ''the face of the record.'' Law which puts it there need not be statutory. It can be properly case-made. Again, validity of the distinction between ''extrinsic'' and ''intrinsic'' fraud should not stagnate in a pool of artificial definitions but should depend upon the nature of the record in the particular proceeding in which that fraud is being examined.

▉ Extrinsic fraud is defined as fraud practiced directly upon the party seeking relief from the judgment which prevents him from presenting all his case before the court. (*Ringwalt* v. *Bank of America*, 3 Cal.2d 680, 684 [45 P.2d 967].)

▉ In *Jorgensen* v. *Jorgensen*, 32 Cal.2d 13, our Supreme Court states at page 18 [193 P.2d 728]: ''. . . The public policy underlying the principle of res judicata that there must be an end to litigation requires that the issues involved in a case be set at rest by a final judgment, even though a party has persuaded the court or the jury by false allegations supported by perjured testimony. [But] this policy must be considered together with the policy that a party shall not be

---

[4]Under Code Civ. Proc. § 670, when a complaint is not answered the judgment roll consists only of the summons, with affidavit of proof of service, the complaint ''with a memorandum indorsed thereon that the default of the defendant in not answering was entered,'' and a copy of the judgment. Those documents are not all before us in this record. Of those named we have only the complaint, proof of service of summons and interlocutory and final decrees. There is no summons, no memorandum, no entry of default.

deprived of a fair adversary proceeding in which fully to present his case. Thus, equitable relief will be denied where it is sought to relitigate an issue involved in the former proceeding on the ground that allegations or proof of either party was fraudulent or based on mistake, but such relief may be granted if the party seeking it was precluded by fraud or the mistake of the other party from participating in the proceeding or from fully presenting his case. . . .''

And the court adds on page 19: ''The terms 'intrinsic' and 'extrinsic' fraud or mistake are generally accepted as appropriate to describe the two different categories of cases to which these policies of the law apply. (Freeman, *ibid.*, p. 2568 [Judgments, Vol. 3 (5th ed.)]). They do not constitute, however, a simple and infallible formula to determine whether in a given case the facts surrounding the fraud or mistake warrant equitable relief from a judgment. [Citations.] It is necessary to examine the facts in the light of the policy that a party who failed to assemble all his evidence at the trial should not be privileged to relitigate a case, as well as the policy permitting a party to seek relief from a judgment entered in a proceeding in which he was deprived of a fair opportunity fully to present his case.''

The facts of this case bring it within the latter category.

Unrepresented by an attorney, unlearned in the law, Swain, through ruse or otherwise, was induced to sign a document unrecognized under our system of code pleading, having not the slightest reference to the purpose for which it is now proposed to give it legitimation. He was visited by a court officer and affirmed a fact which his wife also affirmed—that Diana was not his child. The fact was included in a report which was by law a record of the fact. It was, and is, uncontroverted. It was referred to the court, read by the court, which endorsed its understanding of the matter, and the report was filed with the other papers in the case as a part of the record. The court clearly forgot a fact plainly apparent on the face of that record. The forgetfulness was not only permitted to continue by silence, it was actively shored up by false statements, known to be false and meant to fool the judge that he would make a demand for support payments beyond his power to award in the light of the true facts. The truth was as effectively concealed from the court as though an order of adoption had been presented for the court's signature upon the pretense that it was a divorce decree. The same fraud upon the defendant, plus a fraud upon the court (in

the person of Judge Hauck, Judge Coats' successor) was perpetrated when the final decree was presented for signature and filing. This reviewing court will not be made a party to the fraud. We can see in this case no difference than if we were asked to give approval to a divorce decree in which a marriage was alleged but which it was admitted to us on appeal never had existed.

 It has been contended that for all that appears the husband knowingly consented to the support arrangement, then changed his mind. That issue could have been asserted before the trial court on the husband's motion. It was, however, not raised and no agreement to support was claimed then or is even claimed here. It is not before us. All that is before us is that "on the face of the record," counting the probation officer's report with its uncontroverted statement as a part thereof, it is an established fact that Swain is not the father of Diana, that he never adopted her, and is not liable to support her. That part of the record was concealed by fraud and was thus subject to collateral attack. The trial court properly so determined.

 The order is affirmed.

 Regan, J., concurred.

 FRIEDMAN, J.—I dissent. The principle of judgment finality stimulates less fervor than the urgings of visceral justice. The extent and limitations of res judicata in divorce cases were summarized by us in *Farley* v. *Farley*, 227 Cal. App.2d 1, 8 [38 Cal.Rptr. 357]. The law is not inflexibly harsh with a divorced spouse who finds himself saddled with an invalid judgment past the point of appeal. He may attack the judgment in a collateral proceeding if it is void on the face of the judgment roll. (3 Witkin, Cal. Procedure (1954) pp. 2047-2048, 2117.) He may also seek equitable relief, by motion or separate action, for extrinsic fraud or mistake which prevented him from presenting his case. (*Ibid.*, pp. 2124-2132.)

 Upon collateral attack the judgment roll is the only evidence on the question of jurisdiction. (*Johnson* v. *Hayes Cal. Builders*, 60 Cal.2d 572, 576 [35 Cal.Rptr. 618, 387 P.2d 394]; *Estate of Wise*, 34 Cal.2d 376, 382 [210 P.2d 497].) Limited by Code of Civil Procedure section 670, the judgment roll in this case is impeccable. The majority opinion stretches the judgment roll beyond its statutory limits, then finds a flaw in

it. Such a procedure was flatly rejected in *Borenstein* v. *Borenstein,* 20 Cal.2d 379, 381 [125 P.2d 465], in which the court refused to permit expansion of the judgment roll by inclusion of a custody report.

Nor has the husband alleged extrinsic fraud or mistake. For all that appears, he knowingly consented to the support arrangement, then changed his mind when the financial burden shifted from the shoulders of the federal government to his own. Nevertheless, the majority opinion fills the deficiency by hypothesizing a deceived trial court and a mulcted husband.

If the husband was not misled, the wife's apparent perjury does not signal destruction of the support award. ''The public purpose underlying the principle of res judicata that there must be an end to litigation requires that the issues involved in a case be set at rest by a final judgment, even though a party has persuaded the court or the jury by false allegations supported by perjured testimony. This policy must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which fully to present his case. Thus, equitable relief will be denied where it is sought to relitigate an issue involved in the former proceeding on the ground that allegations or proof of either party was fraudulent or based on mistake, but such relief may be granted if the party seeking it was precluded by fraud or the mistake of the other party from participating in the proceeding or from fully presenting his case.'' (*Jorgensen* v. *Jorgensen,* 32 Cal.2d 13, 18 [193 P.2d 728]; see also *Howard* v. *Howard,* 27 Cal.2d 319 [163 P.2d 439]; *Hendricks* v. *Hendricks,* 216 Cal. 321 [14 P.2d 83].)

Far from expressing fraud or mistake, the present record is more compatible with knowing consent. The husband's ''appearance and waiver'' was like a default in that it manifested his consent to the relief sought by the wife's complaint upon the conditions alleged in the complaint. (*Brown* v. *Brown,* 170 Cal. 1, 5 [147 P. 1168]; *Spurr* v. *Daniels,* 152 Cal.App.2d 867, 870 [313 P.2d 621]; *Garcia* v. *Garcia,* 148 Cal.App.2d 147, 153-154 [306 P.2d 80].) According to the majority opinion, the appearance and waiver was efficacious to switch on the judicial machinery but did not require the signer to accept the machinery's output. Judicial machinery should not be frustrated in this cavalier fashion. I would reverse the order and permit the husband to renew his motion, claiming extrinsic fraud or mistake if he is able.