[No. D014489. Fourth Dist., Div. One. Mar. 4, 1992.]

In re ROBERT A. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Plaintiff and Respondent, v.
ROBERT A. et al., Objectors and Appellants.

## Counsel

Russell S. Babcock and Shirley L. Feagles, under appointments by the Court of Appeal, for Objectors and Appellants.

Lloyd M. Harmon, Jr., County Counsel, Susan Strom, Chief Deputy County Counsel, Gary M. Bubis, Gary C. Seiser, Patricia L. Davis, Irene M. Kessler and James H. Wellman, Deputy County Counsel, for Plaintiff and Respondent.

Francis J. Bardsley, Public Defender, Philip W. Harry, Assistant Public Defender, William E. Boyland, Chief Deputy Public Defender, Ana L. Espana, Thomas S. Palmer and Susan M. Gaskins, Deputy Public Defenders, and Carmela F. Simoncini as Amici Curiae upon the request of the Court of Appeal.

## Opinion

**HUFFMAN, J.**—Two issues are raised in this appeal by four dependent children of the juvenile court, Robert A. and his three half-siblings, Tamela, Heather and Jere D. (the children), of the judgment which included dispositional orders that the children be removed from the physical custody of their parents (Regina A. and Jere D.).

The children contend the juvenile court erred in making a general placement order that the custody of the children should be under the supervision of the probation officer, with the minors to be placed in licensed foster care. (Welf. & Inst. Code,[1] § 361.2, subd. (b).) They argue the facts of the case and the applicable law required the court to make a specific placement order of custody to their current foster parent. In a related contention, the children claim the juvenile court erroneously refused to order that the minors' appointed counsel be given notice of and the opportunity to consult on any changes in the children's foster placement, before such changes were made. (§ 317, subd. (c), (e).)

We conclude that although the juvenile court correctly applied existing law by making a general placement order requiring that the children's custody be supervised by the probation officer (who would then administer that order by placing the children in foster care as appropriate), the juvenile court did not thereby divest itself of its duty to ensure that the ultimate placement made was suitable and in the children's best interests. Moreover, we conclude the children's argument their counsel was entitled to receive prior notice of any changes in their foster placement is supported by statute to the extent that counsel must be enabled to remain in contact with the client. However, the failure to give notice here was harmless. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitions were filed as to all four of these children on February 1, 1991, alleging they were dependent children of the juvenile court as defined by section 300, subdivisions (a) and (b). The allegations of the petitions were that both parents had verbally threatened the children with serious physical harm, were unable to provide regular care for the children due to their own substance abuse, and had exposed the children to violent confrontations in the family home which endangered their physical safety. The detention hearing resulted in an order that the children be detained in the home of their parents' friend, Desiree T., a pending licensed foster placement. Shortly thereafter, the parents entered pleas of no contest, and the petition was amended to delete the allegation of the parents' substance abuse.

The social study prepared for the dispositional hearing stated that Robert A. was interviewed by the probation officer, and said he is "o.k." with living with Desiree T. and is glad he and his two sisters and younger brother are together. At the time of the dispositional hearing, the children were still living in the foster home of Desiree T.

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise specified.

At disposition, the juvenile court referee removed physical custody of the children from their parents under section 361, subdivision (b)(1). (§ 358.) Although the social study prepared by the probation officer recommended specifically that the children be placed in Desiree T.'s licensed foster home, the attorney for the department of social services (the Department) requested that the court issue a general placement order in lieu of a specific placement order.[2] Counsel for the parents concurred, as did appointed counsel for the children. The children's attorney stated:

"I would be in agreement with the recommendations and the changes by the Department. [¶] If the Court is implementing a general placement order on behalf of these minors, I would ask for consultation should a change be made or if not, a minimum of 24 hours' notice, if a change is made, so I can know where my clients are."

The juvenile court referee then made dispositional orders, including general placement of the children with the Department, subject to the social worker being accorded the discretion to detain the minors with the mother once it was verified she had obtained specified reunification services, on the concurrence of the minors' attorney.[3] A six-month review hearing was ordered. The children's attorney then requested clarification from the court on her request for either 24-hour notice or concurrence on a change of placement for the minors. The court responded:

---

[2]At this dispositional hearing held March 25, 1991, this change in the Department's recommendation apparently was based on its "CHILDRENS SERVICES SPECIAL NOTICE" issued February 22, 1991, entitled "REVISED COURT RECOMMENDATIONS." This document "introduces revised dispositional, review, and additional recommendations to the Juvenile Court. These revised recommendations request general orders specifying that the care, custody, and control of a child, who has been declared a dependent, be placed with the Department of Social Services. This Special Notice also establishes procedures for notifying the Court and all parties of a change of placement when you have a general placement order for care, custody and control of a child." The special notice further states that "specific orders for placement . . . have been deleted from the additional [recommendations]." According to the Department's respondent's brief, its efforts to implement general placement orders are pursuant to a "mandate [by § 361.2 and Cal. Rules of Court, rule 1456(a); all further rule citations are to these rules] which is just now beginning to be followed in San Diego County," but "is one which is the norm in most counties."

At the Department's request, this court's record has been augmented to include this document, of which we have taken judicial notice pursuant to Evidence Code sections 452 and 459.

[3]The record is silent on any changes in the children's placement after the dispositional hearing. However, in the amicus curiae brief submitted by the child advocacy division of the office of the public defender, counsel states that at least one of the children, Robert, was returned to his mother's custody shortly after disposition, without notice to or concurrence of his counsel, who did not discover that change in placement for a month or two. Of course, statements in the briefs are not evidence; however, by letter of the presiding justice to the executive director of Appellate Defenders, Inc., dated August 8, 1991, this court has requested counsel to apprise it of relevant changes in the minors' circumstances in dependency matters, even if such changes are not reflected in the record.

"The law is very clear under the statute and the Rules of Court except if the Court returns to a parent or is considering placement with a relative, the Court's only authority is to make a general placement order with the Department. [¶] . . . [¶] I have received no guidelines from the Department or the court on what to do. It would seem to me it is prudent and reasonable to give the minors' attorney prior notice. [¶] . . . [¶] . . . I am not clear whether, under current law, the Court can limit the statutory authority given to the Department and imposing those types of requirements might be a limitation. [¶] But again this court would deem it prudent and reasonable and it certainly would diminish any exposure that might arise if there is complete cooperation with the minors' counsel."

The court, however, declined to make the requested order that notice be given to the children's attorney of changes in foster placement. On her clients' behalf, the attorney sought rehearing of the juvenile court referee's decision. (§ 252.) The application was denied and the children appeal the order.[4]

## Discussion

■ We first address the Department's contention in its respondent's brief that the children's attorney's failure to object at the dispositional hearing to the general placement order operated as a waiver of any claim of error on appeal. (*In re Heidi T.* (1978) 87 Cal.App.3d 864, 876 [151 Cal.Rptr. 263].) Although the children's attorney expressed her agreement with the Department's recommendations, including the recommended general placement order, the attorney continued to seek notice of any change in placement pursuant to the order, or an opportunity to concur with any changes made in placement. The children's acquiescence, through their attorney, with the general placement order was thus not unconditional.

■ However, the fact that the general placement order apparently resulted in a temporary placement of the children with Desiree T., which was the result sought by the children in their request for a specific placement order, makes it reasonable to view the challenge to the general placement order as in some sense a moot point. This is especially so since according to amicus curiae (see fn. 3, *ante*), at least one child has since been returned to

---

[4]The notice of appeal was filed on behalf of all four children. Even though the opening brief's caption lists "Robert A. et al." as "objectors and appellants" and the body of and conclusion to the opening brief request relief on behalf of "appellant minor children" from this court, the respondent's brief states that only Robert A. is the appellant herein. We believe the respondent Department is incorrect in this respect because the notice of appeal lists all four children as appellants, and the appellant's brief seeks relief on behalf of the "minor children." Therefore, we construe this appeal as applying to all four of the children.

his mother's care. It is well established that an appeal presenting only an abstract or academic question is subject to dismissal as moot. (*In re Jody R.* (1990) 218 Cal.App.3d 1615, 1621-1622 [267 Cal.Rptr. 746].) An appellate court may nevertheless address the merits of such an appeal, pursuant to an established exception which provides, " '[i]f an action involves a matter of continuing public interest and the issue is likely to recur, a court may exercise an inherent discretion to resolve that issue, even though an event occurring during its pendency would normally render the matter moot.' [Citation.]" (*Id.* at p. 1622.) Accordingly, we decline to find that the children have waived their arguments on appeal, or that those arguments address only moot points. (*In re Heidi T., supra,* 87 Cal.App.3d 864, 876; *In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737].)

We first address the merits of the children's arguments that a specific placement order was required here. We then examine their claim that their attorney was entitled to receive notice of and the opportunity to consult in any changes in their current foster placement. Our analysis has been aided by the excellent amicus curiae briefs we requested and received from the child advocacy division of the department of the public defender and the staff attorneys of Appellate Defenders, Inc., and thoughtful supplemental briefing from the Department. (Rule 14(b).)

## I

### *General versus Specific Placement Orders*

In support of their claim the juvenile court referee erred in making a general placement order rather than a specific order in this case, the children raise three separate points: (1) When interpreted together, section 361.2, subdivision (b) and section 362, along with rule 1456(a), authorize a specific foster care placement order when the children cannot be placed with a parent; (2) the separation of powers doctrine prevents the juvenile court from delegating its judicial power to the Department by according it the unfettered discretion to decide on the children's foster placement; and (3) Civil Code section 4600 should apply to this dependency matter (*In re B. G.* (1974) 11 Cal.3d 679 [114 Cal.Rptr. 444, 523 P.2d 244]), and Desiree T. qualifies as a de facto parent to whom custody should have been awarded. To analyze these claims, we set forth the statutory and rule provisions outlining the scope of the supervisory power of the juvenile court and the Department over the out-of-home placement of a dependent child.

"Section 361.2 establishes the procedures the court must follow for placing a dependent child with a noncustodial parent or other relative or caretaker following removal from the custodial parent pursuant to section 361."

(*In re Phoenix B.* (1990) 218 Cal.App.3d 787, 792 [267 Cal.Rptr. 269].) Section 361.2, subdivision (a) provides the procedure for the court's direct placement of a dependent child with a noncustodial parent, under specified conditions. However, since these children originally could not be placed with either of their parents, the portion of section 361.2 which gives rise to the issues we review here is subdivision (b), which provides in full as follows:

"When the court orders removal pursuant to Section 361, *the court shall order the care, custody, control, and conduct of the minor to be under the supervision of the probation officer who may place the minor in any of the following*:

"(1)  The home of a relative, including a noncustodial parent.

"(2)  A foster home in which the child has been placed before an interruption in foster care, if that placement is in the best interest of the child and space is available.

"(3)  A suitable licensed community care facility.

"(4)  *With a foster family agency to be placed in a suitable licensed foster family home* or certified family home which has been certified by the agency as meeting licensing standards.

"(5)  A home or facility in accordance with the federal Indian Child Welfare Act." (§ 361.2, subd. (b), italics added, fn. omitted.)[5]

■  The statutory language of section 361.2, subdivision (b) is somewhat unclear as to the actual recipient of a custody order made by the juvenile court concerning a dependent child. The court "shall order the care, custody, control, and conduct of the minor to be under the supervision of the probation officer" (*ibid.*), but the Legislature omitted to specify whether custody should actually reside in the probation officer, or whether legal custody should remain in the parent of the dependent child, with the physical custody of the child to be under the supervision of the probation officer or

---

[5]As relevant herein, section 361.2, subdivision (c) provides for out-of-home placement of a dependent child, when necessary, to be in the county of residence of his or her parents or guardians, unless no such appropriate placement is available. Section 361.2, subdivision (d) provides for notice and hearing upon any objections made by the parents to such out-of-county placement. Section 361.2, subdivision (e) provides for placement in a suitable family home that has a pending license application, under certain conditions.

the Department.[6] Similarly, under section 245.5, the juvenile court is authorized to direct any orders to the parent or guardian of a dependent minor "as the court deems necessary and proper for the best interests of . . . the minor. These orders may concern the care, supervision, custody, conduct, maintenance, and support of the minor . . . ." For all practical purposes, when a dependent child is ordered removed from parental custody under section 361, both legal and physical custody appear under section 361.2, subdivision (b) to be ordered to reside in the probation officer. This conclusion is supported by section 362, subdivision (a), which provides a broad grant of authority to the juvenile court to make any and all reasonable orders "for the care, supervision, custody, conduct, maintenance, and support of the minor," where the minor has been adjudged a dependent child of the court.

Further applicable authority regarding out-of-home placement decisions for a dependent child is found in rule 1456, which sets forth the orders that the juvenile court may make at the disposition hearing. As pertinent herein, rule 1456(a)(5) provides that at the dispositional hearing the court may:

"Declare dependency, remove physical custody from the parent or guardian, and

"(A) Order custody to the noncustodial parent, terminate jurisdiction . . . ; or

"(B) Order custody to the noncustodial parent with services to one or both parents; or

"(C) *Make a general placement order* and consider granting specific visitation rights to the child's grandparents." (Italics added.)

This rule contemplates that if custody is not awarded to the noncustodial parent after the child is removed from the physical custody of the other parent, the court "may" make a "general placement order" with the probation officer. Is this procedure exclusive, and is the rule mandatory or permissive? ■  The general principle is that rules of court which conflict with statutory provisions are invalid or ineffective. (*In re Robin M.* (1978) 21 Cal.3d 337, 346 [146 Cal.Rptr. 352, 579 P.2d 1]; see § 265 [juvenile court rules may be promulgated that are not inconsistent with law].) Accordingly, we are required to construe this rule together with the statutes which it implements (§§ 361, 361.2, subd. (b); see § 362) to determine the scope of the juvenile

---

[6]For purposes of our discussion, we consider the reference in section 361.2, subdivision (b) and related sections to the "probation officer" to apply equally to the Department. Under section 272, the county board of supervisors may delegate to the county welfare department all or part of the duties of the probation officer concerning dependent children.

court's authority to make specific placements at disposition to nonparents, and its authority to oversee such placement decisions made by the Department in the course of its "supervision" of the custody of a dependent child.

An analysis of the juvenile court's power to oversee the placement of dependent children should begin with section 202, a legislative statement of the purpose of the juvenile court law. In pertinent part, section 202, subdivision (a) states that preservation of a minor's family ties are a main goal of the chapter. "When the minor is removed from his or her own family, it is the purpose of this chapter to secure for the minor custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents. This chapter shall be liberally construed to carry out these purposes." (*Ibid.*) Section 202, subdivision (b) further provides, "[m]inors under the jurisdiction of the juvenile court who are in need of protective services shall receive care, treatment and guidance consistent with their best interest and the best interest of the public."

At the dispositional stage of a dependency proceeding, the juvenile court is required under section 358 to hear evidence on the question of the proper disposition to be made of the minor, and is required to receive into evidence, read, and consider the social study made by the probation officer, including his or her recommendation for an appropriate disposition. (§§ 358, subd. (b), 280, 281.)

On its part, the probation officer (or the Department; see fn. 6, *ante*) has statutorily mandated duties in connection with the dependency proceedings. Under section 280, the probation officer is required to be present in court to represent the interests of the child who is the subject of the dependency petition, and is required to furnish to the court "such information and assistance as the court may require." The probation officer is further required to prepare a social study of the minor in connection with the dispositional and other such hearings, containing "such matters as may be relevant to a proper disposition of the case," and a recommendation for disposition. (*Ibid.*; also see § 281.) Section 326 provides that the probation officer or the petitioning social worker shall be considered to be the guardian ad litem who represents the interests of the minor in dependency proceedings, unless another guardian ad litem is appointed.

■ The Supreme Court has recognized that the probation officers who prepare social studies for use at disposition in dependency proceedings are "disinterested parties" who prepare such reports "in the regular course of their professional duties." (*In re Malinda S.* (1990) 51 Cal.3d 368, 377 [272 Cal.Rptr. 787, 795 P.2d 1244].) These reports accordingly have the characteristics of objectivity and expertise, which lend them a degree of reliability

and trustworthiness. (*Ibid.*) The Supreme Court relied on *Swain* v. *Swain* (1967) 250 Cal.App.2d 1, 8 [58 Cal.Rptr. 83], for the proposition that a probation officer becomes a "special arm of the court" to investigate the status of the children and report. (*In re Malinda S., supra,* at p. 377, fn. 8.) Obviously, the juvenile court is entitled to rely on the expertise and the recommendations of the probation officer in making its dispositional determinations. It should also be wary of substituting its own professional judgment for that of workers experienced in the field. (See Goldstein et al., In the Best Interests of the Child (1986) pp. 21-31; *In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1234-1235 [255 Cal.Rptr. 344].)

The relationship of the juvenile court and its assisting "arm" (*Swain* v. *Swain, supra,* 250 Cal.App.2d 1, 8), the Department, is correctly analyzed in terms of the constitutional separation of powers. (*In re Danielle W., supra,* 207 Cal.App.3d at pp. 1235-1237.)

"Judicial power is in the courts and their function is to declare the law and determine the rights of parties to a controversy before the court. [Citation.] Executive or administrative officers cannot exercise or interfere with judicial powers. [Citation.]" (*In re Danielle W., supra,* 207 Cal.App.3d at p. 1235, fn. omitted.)

However, such separation of powers need not and cannot be absolute.

" 'The correct principle deducible from the better-reasoned cases dealing with the separation of powers seem[s] to be that even the primary function of any of the three departments may be exercised by any other governmental department or agency so long as (1) the exercise thereof is incidental or subsidiary to a function or power otherwise properly exercised by such department or agency, and (2) the department to which the function so exercised is primary retains some sort of ultimate control over its exercise, as by court review in the case of the exercise of a power judicial in nature.' [Citation.]" (*In re Danielle W., supra,* 207 Cal.App.3d at p. 1236.)

In *Danielle W., supra,* 207 Cal.App.3d 1227, the Court of Appeal was required to interpret a juvenile court order that parental visitation with the dependent children would be at the Department's discretion and the children's discretion. Noting that it was not going to force the children to visit their mother if they did not want to, the juvenile court had specified that when the children did want to visit, it would be at a location selected by the Department, designed to accommodate the convenience and wishes of the mother and the children. The Court of Appeal found such a visitation order did not represent an improper delegation of judicial power, because it merely

authorized the Department to administer the details of visitation, as specified by the court. The Court of Appeal explained: "The nature of the task of the juvenile court system in responding to the rapidly changing and complex family situations which arise in dependency proceedings and the interests of judicial economy require the delegation of some quasi-adjudicatory powers to a member of the executive branch dedicated to the dependent child's welfare. As long as that role is limited and subject to supervision, as it was here, there is no violation of the separation of powers doctrine." (*In re Danielle W., supra,* 207 Cal.App.3d at p. 1237.) In an abundance of caution, however, the court pointed out that a visitation order granting the Department complete and total discretion to determine whether or not visitation would occur would be invalid, because the juvenile court was the decision-maker as to whether or not visitation should occur, and held the power to specify guidelines as to the prerequisites of visitation or any judicially ordered limitations or required circumstances. (*Ibid.*)

With these principles in mind, we turn to an examination of the legislative history of section 361.2. The subject matter of this statute was previously included in former section 362, subdivision (1), enacted in 1977, providing in pertinent part as follows:

"The court may order the care, custody, control and conduct of such minor to be under the supervision of the probation officer or may commit such minor to the care, custody and control of:

"(a)   Some reputable person of good moral character who consents to such commitment.

"(b)   Some association, society, or corporation embracing within its objects the purpose of caring for such minors, with the consent of such association, society, or corporation.

"(c)   The probation officer, to be boarded out or placed in some suitable family home or suitable private institution . . . .

"(d)   Any other public agency organized to provide care for needy or neglected children." (Stats. 1977, ch. 21, § 8.)

Under this former law, the juvenile court had the option of allowing the Department to choose the placement by making a general placement order, or was empowered to choose and order a specific placement itself by making a direct placement order.

When the Legislature enacted Senate Bill No. 14 in 1982 (Stats. 1982, ch. 978 § 21, p. 3536), it changed section 362 to include the current version of the statutory language (as now found in section 361.2):

"When the court orders removal pursuant to section 361, the court shall order the care, custody, control, and conduct of such minor to be under the supervision of the probation officer who may place the minor in any of the following: [a list of the various types of placements that the probation officer could make]." (Stats. 1982, ch. 978, § 21, p. 3536.)

Evidently, the Legislature recognized in former section 362 that it is the Department's social workers or the probation officer who have the expertise to make an appropriate out-of-home placement of a dependent child where necessary. ██ This amendment of existing law by deleting an express provision of a previous statute leads to a presumption that the Legislature intended a change in the law. (*People* v. *Valentine* (1946) 28 Cal.2d 121, 142 [169 P.2d 1]; *People* v. *Perkins* (1951) 37 Cal.2d 62, 63-64 [230 P.2d 353].)

The Legislature again changed the provisions applicable to out-of-home placements of dependent children in 1986, when it repealed former section 362 and rewrote and reenacted the dispositional placement order law as new section 361.2, subdivision (b). (Stats. 1986, ch. 1122, § 12, p. 3982.) (7) When a revised act reenacts a provision of an earlier act, its effect is to continue in force that which is reenacted. (*Greeley* v. *Suey Sing Benev. Assn.* (1938) 28 Cal.App.2d 536, 538 [83 P.2d 54].)

██ Even though the Legislature, by amending section 362 and enacting section 361.2, made clear a legislative intent to allow the juvenile court to delegate the direct supervision of the custody of dependent minors to the probation officer or the Department, it did not act in any way to remove the general supervisory power of the juvenile court over the performance of the specified duties by the court's "arm," the Department. As the court in *In re Danielle W., supra,* 207 Cal.App.3d at page 1238 explained, the Department has a "hybrid responsibility" of representing the state in seeking the best interests of the child, while simultaneously administering the court's orders, "subject to the supervision of the juvenile court which provides the parent with the required due process." (*Ibid.*; see also *In re Jennifer G.* (1990) 221 Cal.App.3d 752, 758-759 [270 Cal.Rptr. 326]; *In re Kristin W.* (1990) 222 Cal.App.3d 234, 256 [271 Cal.Rptr. 629].) At the dispositional hearing, the juvenile court is required under section 358 to have the assistance of the probation officer's social study and recommendations in making an appropriate disposition of the minor. However, the ultimate decision on disposition is made by the court, in the performance of its duties under section 202, subdivision (b) to ensure that dependent minors "shall receive care, treatment and guidance consistent with their best interest." (*Ibid.*) Under section 202, subdivision (a), the court also must provide for the protection and safety of dependent minors, and seek to preserve and strengthen the minor's family

ties whenever possible. Its order under section 361.2, subdivision (b) placing the custody of the minor under the supervision of the probation officer remains subject to the continuing duties of the juvenile court to ensure that the activities carried out by its "arm" are consistent with the mission of the juvenile court as a whole. (See *In re Danielle W. supra*, 207 Cal.App.3d at pp. 1234-1235, 1238.)

■ In its respondent's and supplemental briefs, the Department has argued that existing law adequately provides for several means of review of the exercise of its power to determine specific out-of-home placements: judicial review upon request (apparently in a separate action) to determine if there were any abuses of discretion in the Department's administrative decisions; judicial decisionmaking on a petition filed pursuant to section 387 to authorize a change in the level of placement; and notice and hearing on the Department's plan to place a child out of county pursuant to section 361.2, subdivision (d). While these methods provide some form of judicial oversight in specific situations, they do not comprise the entirety of the general supervisory power of the juvenile court over its arm of court, the Department, to ensure that the Department's decisions are consistent with the overall purposes of the juvenile court law. No separate action in administrative mandamus or separate petition procedure is necessary to allow the juvenile court, in the course of its regular disposition and review hearings, when appropriate facts are brought to its attention, to reach a decision that the activities of the Department in foster placement require guidance and direction.

■ Thus, we conclude the statutory scheme of the juvenile court law requires that once the court has placed the custody of the minor under the supervision of the probation officer (§ 361.2, subd. (b)), the court retains jurisdiction to oversee the administration by the Department, in its choice among the enumerated placement alternatives in section 361.2, subdivision (b), of the custody and care of the minor. Although the court does not make a direct placement order itself, it does have the power to instruct the Department to make a particular out-of-home placement of a particular dependent child. As an arm of the court, the Department is naturally interested in following the instructions of the court and carrying out its wishes, consistent with the exercise of its own expertise in the area, on which the court depends for guidance. As a party in the case, the Department remains subject to the juvenile court's orders. Thus, where a judicial decision such as out-of-home placement is required, the authority of the Department to implement that order must necessarily be limited in particular situations, as required by the court's interpretation of the best interests of the child. (§ 202, subd. (b).)

■ With these statutory guidelines in mind, it becomes evident that the provisions of rule 1456(a)(5)(C), providing that at disposition the court "may" make a "general placement order," are permissive rather than mandatory. This rule of court cannot properly be construed as interfering with the juvenile court's power to become directly involved in dispositional placement decisions, as when it may instruct the Department to make a particular placement. The terms of section 361.2, subdivision (b) otherwise indicate that the juvenile court has the authority to oversee the Department's supervision of custody by requiring the Department, for good cause shown, to make or change a particular placement decision at or after the dispositional hearing. To use a physiological metaphor: in these proceedings, the juvenile court performs the function of the nerve center or brain, directing its "arm" to carry out those functions for which it is particularly suited.

In conclusion on this point, the children have made a corollary argument that the juvenile court should have recognized that Desiree T., their foster mother since the time of detention, qualified as a "de facto parent," within the meaning of *In re B. G., supra,* 11 Cal.3d 679, 684 and Civil Code section 4600, and should have specifically placed the children with her. ■ As this court noted in *Jones T. v. Superior Court* (1989) 215 Cal.App.3d 240, 245, footnote 3 [264 Cal.Rptr. 4] a 1984 amendment to Civil Code section 4600 (assuring children of frequent and continuing contact with their parents *after the parents' separation or dissolution of marriage*) indicates that Civil Code section 4600 "no longer applies to dependency proceedings." Instead, the specific statutory scheme for the care, custody, control and placement of dependent children (§ 200 et seq.) governs judicial proceedings concerning such children. These facts do not require this court to address the issue of Desiree T.'s qualifications as a de facto parent, in light of the temporary nature and short duration of placement of the children with her, because the juvenile court had a sufficient basis under sections 361.2 and 362, coupled with sections 202, subdivision (b) and 358, to make the dispositional orders as it did.

## II

### Notice to the Children's Attorney

Although the juvenile court referee agreed with the children's attorney that it would be prudent and reasonable to give her prior notice of any changes in the children's foster placement, the court declined to make such an order, commenting that it might limit the statutory authority given to the Department by imposing such a notice requirement regarding placement. Pointing to several provisions in the juvenile court law for notice to the

minor and his or her attorney before similar changes are made,[7] the children contend such notice is essential to enable the attorney to carry out his or her duties of ongoing representation of the minor. (§ 317, subd. (c), providing in pertinent part: "In any case in which it appears to the court that the minor would benefit from the appointment of counsel the court shall appoint counsel for the minor.") As further support for their position, the children rely on section 317, subdivision (e), which provides in full as follows:

*"The counsel for the minor shall be charged in general with the representation of the minor's interests.* To that end, counsel shall make such further investigations as he or she deems necessary to ascertain the facts, including the interviewing of witnesses, and he or she shall examine and cross-examine witnesses in both the adjudicatory and dispositional hearings; he or she may also introduce and examine his or her own witnesses, *make recommendations to the court concerning the minor's welfare, and participate further in the proceedings to the degree necessary to adequately represent the minor.* In any case in which the minor is four years of age or older, counsel shall interview the minor to determine the minor's wishes and to assess the minor's well-being. In addition, counsel shall investigate the interests of the minor beyond the scope of the juvenile proceeding and report to the court other interests of the minor that may need to be protected by the institution of other administrative or judicial proceedings. The court shall take whatever appropriate action is necessary to fully protect the interests of the minor." (§ 317, subd. (e), italics added.)

There are two components to the children's request that their attorney receive notice of any changes in their current foster placement. First, notice of such changes is argued to be essential to allow the attorney to carry out adequate representation of the minors' interests, by the mere fact of maintaining contact with and access to the minors. Under section 317, subdivision (e), since the minor's attorney is required to make recommendations to the court concerning the minor's welfare, and "participate further in the proceedings to the degree necessary to adequately represent the minor," we agree with the juvenile court referee that it would be prudent and reasonable to give the children's attorney prior notice of changes in foster placement.

██ As we have outlined above (in pt. I, *ante*), the juvenile court is required under the statutory scheme of dependency law to maintain supervisory power over the delegation of the custody of the minors to the probation

---

[7]As sample provisions providing for notice to the minor and his or her counsel, the children point to section 387 (removal from parental custody/relative custody to a foster home requires a noticed hearing), section 337 (notice after detention is required), section 335 (notice of the filing of a dependency petition is required), and section 386 (no changes to court *orders* may be made without notice to the minor, the parents, and the probation officer). As the Department has cogently noted regarding section 386, postdispositional changes in foster placement are not changes in "orders."

officer, including supervision over the implementation of a general placement order. The inherent powers of the court to provide for the orderly conduct of proceedings before it include the power to require that notice consistent with the demands of due process be afforded. (Code Civ. Proc., §§ 128, subd. (a)(3), 187.) To effectively carry out its supervision of custody, the juvenile court is required to ensure that the parents are provided with the required due process. (*In re Danielle W., supra,* 207 Cal.App.3d 1227, 1238.) Like the parents, the minor is entitled to the same degree of due process. It is no limitation on the Department's powers under a general placement order to require it to provide notice of changes in placement, and we are told in the respondent's brief that the Department has voluntarily been doing so within the terms of its "Childrens Services Special Notice," with which our record has been augmented.

The minors' attorney in this case also requested the opportunity to concur in any changes of placement for the minors. We have alluded above to the view that not every professional involved in the juvenile dependency arena can profess expertise in every field (e.g., lawyering, social services, or judicial decisionmaking). (See Goldstein et al., *op. cit. supra,* at pp. 21-37.) Where a minor has appointed counsel, that counsel is charged with the representation of the minor's legal interests. (§ 317, subd. (e).) He or she does not serve as the guardian ad litem for the child, which function is served by the social worker. (§ 326.)

Since a minor's attorney has a duty to obtain current information from his or her client, in order to present it to the court for its information in making its dispositional or other orders, in some sense an attorney must "concur" that a particular placement is appropriate, or else bring the matter to the court's attention for correction. In order that an attorney may evaluate the client's well-being, the Department has a duty to give timely[8] notice to the minor's attorney of postdispositional changes in foster placement, so that the attorney may carry out his or her duty to represent the minor's interests, by being able to be in contact with the client, which may in some cases lead to a request for the court's assistance in rectifying a placement that does not serve the child's best interests.

No such notice was given the children's attorney in this case. We do not find this omission caused harmful error, however. As explained above, although the children were originally placed (pursuant to the general placement order) in the same foster home as had originally been recommended for a specific placement order, it appears that at least one of the children was

---

[8]By "timely" we mean as soon as the Department makes a decision on the placement or proposed change in placement.

later returned to parental custody. Apparently, the children's attorney was unable to evaluate this change at the time it occurred. While to this extent her duty of representation was interfered with by the Department, we have been pointed to no facts showing that any prejudice occurred in this respect. On that basis, and for the reasons explained above, we affirm the judgment entered after the dispositional hearing.

## DISPOSITION

The judgment is affirmed.

Work, Acting P. J., and Todd, J., concurred.

A petition for a rehearing was denied March 23, 1992.