Filed 5/31/13  In re A.A. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.A., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>M.A.,<br><br>        Defendant and Appellant. | E057166<br><br>(Super.Ct.No. RIJ1200660)<br><br>**OPINION** |

APPEAL from the Superior Court of  Riverside County.  Jacqueline C. Jackson, Judge.  Affirmed.

Kathleen Murphy Mallinger, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

M.A. appeals from the juvenile court's refusal to prohibit the placement of his infant son A.A. with A.A.'s maternal grandparents. We will conclude that the challenged order is ripe for review, but M.A. has not shown any abuse of discretion.

I

FACTUAL AND PROCEDURAL BACKGROUND

M.A. (the father) and T.A. (the mother) are the parents of A.A. (sometimes the child).

In June 2012, A.A. was born with methadone withdrawal. The methadone had been prescribed to the mother for a chronic pain condition. She claimed to have had prenatal care from a medical facility that she named, but it had no record of her. She could not name any of the doctors she had seen. She eventually admitted that she had seen an obstetrician only four times during the first half of her pregnancy and none during the second half.

The mother admitted that she suffered from anxiety but was not receiving any medical care for it. The father similarly admitted that he suffered from anxiety and depression but was not receiving medical care.

A dependency proceeding regarding an older sister was already pending in Los Angeles County. Due to domestic violence and alcohol abuse, she had been removed from the parents' custody; reunification services had been terminated, and a hearing had been set pursuant to Welfare and Institutions Code section 366.26. The sister was placed

2

with the maternal grandparents, who lived in Orange County, and they were seeking to adopt her.

As a result of all this, the Department of Public Social Services (the Department) detained A.A. and filed a dependency petition concerning him.

A.A remained in the hospital until August 2012, when he was placed in a foster home. The maternal grandparents requested that A.A. be placed with them. The social worker noted that the grandmother had a "criminal history" that would require an exemption. The social worker also noted that both parents "strongly object[ed]" to placement with the grandmother.

In September 2012, at the jurisdictional/dispositional hearing, the juvenile court found jurisdiction based on failure to protect. It formally removed A.A. from the parents' custody and ordered reunification services.

At the hearing, there was this discussion of placement:

"[FATHER'S COUNSEL]: . . . [F]ather does object to out of county placement. He feels it would be detrimental to reunification and contact [with] the child. In — the current placement he feels is very good and they work with the parents. Out of county will make it difficult logistically, and there is issues — there may be issues with the relative.

"THE COURT: Does that mean [o]bjecting to placement with the grandmother — does that mean out of county with the grandmother in O[range] C[ounty]?

"[FATHER'S COUNSEL]: Yes.

3

"THE COURT: Just want to be clear.

"[FATHER'S COUNSEL]: There is a possibility of interference either logistically or with the relationship between the grandmother and father. So we are objecting to out of county placement."

The court did not respond immediately. Rather, it proceeded to make its jurisdictional and dispositional orders. In the course of its ruling, however, it stated:

"[THE COURT:] And, at this point, the Court's not going to contravene the statutory preference for placement with relatives, and relative is literally in the county next door and it shouldn't be too problematic. I don't know that the child will be placed there, but I'm not going to prohibit that at this point in time. [¶] . . . [¶]

"[FATHER'S COUNSEL]: Dad wanted to the Court to know there is, I believe, a felony in the background of the potential caretaker.

"THE COURT: That all gets examined.

"[FATHER'S COUNSEL]: As well as referrals from neighbors in the area. And again, he is objecting to out of county placement. I think if the parent objects to out of county placement, then that would interfere with reunification. I think that's an issue. I think it overrides the preference for relative placement because the focus is on reunification at this point.

"So again, just if the Court's going to override that I just want it to be on record that there is a concern about interference with reunification, both the distance and the issues with the relative.

4

"THE COURT:  Okay.  It's noted.  Although L.A. County has already placed a minor there, so it's hard to believe there's a felonious background in the family.  But it's noted."

It gave the Department supervision of A.A.'s placement, which could be "*in the approved home of a relative* or nonrelative extended family member; [¶] in the foster home in which the child(ren) was/were placed before . . . ; or with a foster family agency for placement in a foster family home."  (Italics added.)

The juvenile court ordered that if, in fact, the child was placed in Orange County, the Department was to assist the parents with transportation to visitation.

II

RIPENESS

Preliminarily, the Department contends that the issues are not ripe for review because the child has not yet been placed with the maternal grandparents and may never be.

"[T]he ripeness requirement prevents courts from issuing purely advisory opinions, or considering a hypothetical state of facts in order to give general guidance rather than to resolve a specific legal dispute.  [Citation.]"  (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 998.)

"Before a controversy is ripe for adjudication it '"must be definite and concrete, touching the legal relations of parties having adverse legal interests.  [Citation.]"' [Citation.]  Thus, '[t]he legal issues posed must be framed with sufficient concreteness

5

and immediacy so that the court can render a conclusive and definitive judgment rather than a purely advisory opinion based on hypothetical facts or speculative future events. [Citation.]' [Citation.]" (*San Diego County Water Authority v. Metropolitan Water Dist.* (2004) 117 Cal.App.4th 13, 20, fn. 2.)

"Unripe cases are '[t]hose in which parties seek a judicial declaration on a question of law, though no actual dispute or controversy ever existed between them requiring the declaration for its determination.' [Citation.]" (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573.)

Here, the father asked the juvenile court to forbid the Department to place the child with the maternal grandparents. He argued that such a placement would make visitation difficult, both "logistically" and because "there may be issues with the relative." He also argued that the maternal grandmother had a felony conviction. If the juvenile court were to grant his request (or if we were to reverse, holding that it should have granted his request), it could render a conclusive and definite order barring the placement. However, it refused to do so. Thus, it allowed the Department to continue to consider the placement. "These facts are sufficient to satisfy the ripeness requirement because they present a '"definite and concrete [controversy] touching the legal relations of parties having adverse legal interests." [Citation.]' [Citation.]" (*Zubarau v. City of Palmdale* (2011) 192 Cal.App.4th 289, 301, fn. omitted.)

This is not a case in which the possibility of a placement with the maternal grandparents was purely hypothetical. The maternal grandparents were entitled to

6

preferential placement consideration.  (Welf. & Inst. Code, § 361.3.)  The Department stated that it "intends to place the child with his sibling in Orange County with the future goal of adoption."  Arguably, the juvenile court, in its discretion, could have ruled that it would not decide whether the child could be placed with the maternal grandparents unless and until the Department actually approved such a placement.  That ruling, too, would be ripe for review; however, we could consider only whether it properly determined that that the issue was premature.  In any event, that is not what it did.

We caution, however, that our review is necessarily limited to the facts and the record as they appeared at the time of the dispositional hearing.  Thus, even though the issue is ripe, the juvenile court could properly refuse to prohibit the placement if there was insufficient evidence to support such a prohibition.  (See part III, *post*.)  The Department seems to confuse the two issues, arguing that "[t]here is inadequate evidence in the record to support placing [A.A.] with the maternal grandparents because the [t]rial [c]ourt never issued such an order."  It is true that the juvenile court did not order A.A. placed with the maternal grandparents.  However, it did *refuse* to order that he *not* be placed with the maternal grandparents.  That order is sufficiently ripe for review.  If, as the Department argues, there is insufficient evidence to support a different order, that goes to the merits of the order, not its ripeness for review.

III

MERITS

Whenever the juvenile court removes a child from a parent's custody, "the court *shall* order the care, custody, control, and conduct of the child to be under the supervision of the social worker who *may* place the child in any of" certain specified placements (Welf. & Inst. Code, § 361.2, subd. (e)), including "[t]he approved home of a relative . . . ." (Welf. & Inst. Code, § 361.2, subd. (e)(2), italics added.)  Such an order is called a general placement order.  (E.g., *M.L. v. Superior Court* (2009) 172 Cal.App.4th 520, 529.)

The court, however, also has broad power to "make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child . . . ." (Welf. & Inst. Code, § 362, subd. (a).)  The Department acts as an "arm" of the court (*In re Robert A*. (1992) 4 Cal.App.4th 174, 186), and the juvenile court retains "general supervisory power . . . over the performance of the [Department's] specified duties . . . ." (*Id*. at p. 188.)  The juvenile court has "continuing duties . . . to ensure that the activities carried out by its "arm" are consistent with the mission of the juvenile court as a whole. [Citation.]"  (*Id*. at p. 189.)

Accordingly, the juvenile court "may instruct the Department to make a particular placement." (*In re Robert A*., *supra*, 4 Cal.App.4th at p. 190.)  It may also "require[e] the Department . . . to make or change a particular placement decision at or after the

8

dispositional hearing." (*Ibid*.)  Such an order is called a specific placement order.  (E.g., *id*. at p. 180.)

"A juvenile court's placement orders are reviewed under the abuse of discretion standard; the court is given wide discretion and its determination will not be disturbed absent a manifest showing of abuse.  [Citation.]  The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  [Citation.]  A court has exceeded the bounds of reason by making an ""'arbitrary, capricious, or patently absurd determination. . . .""'  [Citation.]  'Broad deference must be shown to the trial judge.  The reviewing court should interfere only "'if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did."'  [Citation.]"  (*In re Sabrina H*. (2007) 149 Cal.App.4th 1403, 1420-1421.)

As already noted, the juvenile court is statutorily authorized to make a general placement order.  Indeed, the statute purports to provide that it "shall" make a general placement order.  Even though this should not be taken literally, so as to require the juvenile court to make a general placement order in every case, at a minimum, it establishes a presumption in favor of a general placement order.  Hence, the burden was on the father to show that a general placement order was inappropriate and a specific placement order prohibiting placement with the maternal grandparents was necessary.

The father, however, did not offer any *evidence* whatsoever in support of his request.  The social worker's reports introduced at the dispositional hearing did not

contain any evidence that there were any "issues" between the father and the maternal grandparents. Moreover, they showed that the father was generally hostile and not always rational. For example, he claimed that "the doctors at [the hospital] have put [A.A.] on [m]ethadone to keep him addicted so they . . . can make money." The hospital had banned him from visiting because "he has been volatile with hospital staff and the mother during visits." The juvenile court could reasonably conclude that he was at fault for any "issues" he may have had.

The father cites the maternal grandparents' statement to a social worker that "the parents have a long history of . . . transient behavior, domestic violence, and are both habitual liars"; the grandparents "expressed concern for any child left in [the parents'] care." The record, however, shows that this statement was perfectly accurate. Any sensible person would be "concern[ed]" about leaving a child in the parents' care. The maternal grandparents were not any different in this respect from any other potential caregiver. This was not evidence that they would interfere with visitation.

The father was living in Riverside. Although he avoided providing a full social history, he did tell a social worker that he was employed. Thus, there was no evidence that it would be hard for him to visit in Orange County. In any event, the juvenile court did order that he be provided with transportation assistance.

Next, while there was evidence that the maternal grandmother had a felony conviction, there was no evidence of the *nature* of the conviction. If the Department issues a criminal records exemption (see Welf. & Inst. Code, § 361.4, subd. (d)), then

10

presumably the conviction was *not* a reason *not* to place A.A. with the maternal grandmother. And if the Department does not, then the placement will never occur.

Finally, there was at least some evidence that placement with the maternal grandparents would be in A.A.'s best interest: It would keep him together with a sibling.

The father complains that the juvenile court did not have enough evidence to support the approval of placement with the maternal grandparents. However, that is not what the juvenile court did. Rather, it *refused* to *disapprove* the placement. It left it up to the Department to determine whether the placement should actually occur. The burden was on the father to prove that there was no point to even so much as *considering* the placement. This he failed to do.

Given the lack of evidence that the placement was inappropriate, the father should have let the Department continue to investigate. It might never have placed A.A. with the maternal grandparents after all. However, if it did, he could have asked the juvenile court to prohibit the placement at that point. That would have given him, the Department, the juvenile court, and, last but not least, this court the benefit of the results of the Department's investigation. Instead, he proceeded without an adequate evidentiary record, ensuring his own defeat.

Finally, the father argues that the juvenile court erred by making a general placement order because this improperly delegated its placement authority to the Department, in violation of the constitutional requirement of separation of powers. This argument is frivolous. As already discussed, by statute, a general placement order is the

11

norm; a specific placement order is the exception.  It has been held that a general placement order does not violate the separation of powers doctrine.  (*In re Robert A.*, *supra*, 4 Cal.App.4th at pp. 186-189.)

We therefore conclude that the father has not shown that the juvenile court abused its discretion.

IV

DISPOSITION

The order appealed from is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI _____
                                                                                                              J.

We concur:

RAMIREZ _____
                            P. J.

HOLLENHORST _____
                            J.

12