[No. D023832. Fourth Dist., Div. One. Sept. 25, 1995.]

CLIFFORD S., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Real
Party in Interest.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Steven J. Carroll, Alternate Public Defender, Jacqueline C. Crowle and Dale Santee, Deputy Alternate Public Defenders, for Petitioner.

No appearance for Respondent.

Lloyd M. Harmon, Jr., County Counsel, Susan Strom, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, for Real Party in Interest.

## OPINION

HALLER, J.—This case presents the issue of whether a de facto parent has standing to challenge the denial of reunification services or contest the reasonableness of services offered. Because a de facto parent, like a stepparent, has no right to reunification services, we conclude that a de facto parent lacks standing to raise reunification issues.

### FACTUAL AND PROCEDURAL BACKGROUND

Clifford S. and his wife, Rita, have four children together; Rita has three children by previous relationships, including Chantella, the minor in question here. The department of social services (Department) filed a dependency petition on August 6, 1993, alleging Chantella had suffered accidental burns several months earlier and had not received proper medical care. An allegation the other children were at risk was dismissed. The matter was submitted, and the petition was sustained on August 19, 1993.

According to the social services report for the dispositional hearing on September 15, 1993, a parent search had been initiated the preceding month for Chantella's presumed father, Jack L. The Department also reported that because Rita now suggested Clifford might be Chantella's father, a paternity test was ordered. Notwithstanding the question of paternity, Clifford was, at that time, offered reunification services, including participation in medical appointments, services of a public health nurse, therapy and visitation. As to those services specifically relating to Chantella, that had to do with medical appointments and medical care, the reunification plan designated the minor as "stepchild."

At the time of the six-month hearing, stepfather Clifford, was participating in therapy; however, his visitation was not regular since he often stayed home with the other children so Rita could visit. The Department also reported Chantella was healing.

On July 1, 1994, the juvenile court found Clifford was not the biological father. That same day, he filed to become a de facto parent, a request that was granted on August 5, 1994. In the meantime, Anthony, three months old, had been removed from the home for failure to thrive. In connection with Anthony's adjudication hearing on August 5, the parents signed the reunification plan with both Clifford and Rita signing for Anthony, and Rita, alone, signing as to Chantella. The following spring, another of Clifford's stepchildren, Mercy, became the subject of a dependency petition based on allegations of sexual molest.

At the 18-month hearing, the court found reasonable services had been provided and there was a substantial risk of harm in returning the minor to the home. The court terminated services and referred the matter to the Welfare and Institutions Code[2] section 366.26 hearing. Clifford sought writ review of that reference, contending he was in substantial compliance with the reunification plan, reasonable services were not offered, and the court improperly denied a mistrial.

We review the petition under section 366.26, subdivision (b)(1) and rule 39.1B. We decline to reach the merits on the issues involving reunification services since Clifford lacks standing to pursue them.[3] In that the Department does not contest Clifford's standing to challenge the denial of a mistrial, we address the question on the merits and deny the petition finding there is no prejudice.

DISCUSSION

### I. *Standing*

In order to question the services offered or the conduct of the proceedings, one must have standing.

Without standing, there is no actual or justiciable controversy, and courts will not entertain such cases. (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 44, pp. 70-72.) "Typically, . . . the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." (*Allen* v. *Wright* (1984) 468 U.S. 737, 752 [82 L.Ed.2d 556, 570, 104 S.Ct. 3315].) In other words, whether one has standing in a particular case generally revolves around the question whether that person has rights that may suffer some injury, actual or threatened. Thus, we examine whether Clifford, as a de facto parent, has sufficient rights at stake with respect to reunification services to confer standing upon him.

A person becomes a de facto parent by application to the court when he or she has participated in the day-to-day care and rearing of the child over an extended period of time. (*In re B.G.* (1974) 11 Cal.3d 679, 692, fn. 18 [114 Cal.Rptr. 444, 523 P.2d 244]; rule 1401(a)(4).) As a de facto parent, the person becomes a party and is permitted to participate in the dependency proceedings to assert and protect his or her own "interest in the 'companionship, care, custody and management' of that child." (11 Cal.3d at p. 692,

---

[2]All statutory references are to the Welfare and Institutions Code unless otherwise specified. All rule references are to the California Rules of Court.

[3]Rita, who does have standing, has not sought writ relief.

fn. omitted.) Because of the close contact with and interest in the child, participation of de facto parents in the proceedings helps the court in making determinations with regard to the minor's future. (*Id.* at p. 693.)

De facto parents have the right to be present at the dependency proceedings, to have retained or, at the discretion of the court, appointed counsel and to present evidence at the hearings. (Rule 1412(e).) However, the status of de facto parenthood does not give de facto parents the rights and responsibilities of parents or guardians. (*In re Kieshia E.* (1993) 6 Cal.4th 68, 77 [23 Cal.Rptr.2d 775, 859 P.2d 1290].) Specifically, they do not have the right to reunification services, custody, or visitation. (*Id.* at p. 82 (dis. opn. of Kennard, J.).)

The same is true of stepparents. A person becomes a stepparent by marrying the natural biological parent and loses stepparent status should the marriage be terminated. A stepparent has no legal obligation to support his or her stepchild. Likewise, absent a formal adoption of the child, a stepparent has no right to any reunification services. (*In re Jodi B.* (1991) 227 Cal.App.3d 1322, 1328-1329 [278 Cal.Rptr. 242].)

In either instance, as stepparent or de facto parent, the person has the right to appeal certain issues. However, because neither has a right to reunification services, there is no standing to challenge the failure of the court to order such services. If a person is given services to which he or she is not entitled, there is no right to complain on appeal of the court's findings. (*In re Jamie G.* (1987) 196 Cal.App.3d 675, 683-684 [241 Cal.Rptr. 869].)

Here, Clifford entered the dependency proceedings as a stepfather. As a stepfather, he had no right to reunification services. Because Rita suggested he might be the biological father, testing was ordered at the dispositional hearing. We do not know with certainty whether reunification services were ordered at that time because of Clifford's possible paternity. Whatever the reason, it is irrelevant for our purposes since he had no right to complain of the court's findings. The fact he "substantially complied" with the offered services and the fact he thought the services he received were unreasonable are both issues that Clifford has no standing as a stepparent to raise.

After the court found that Clifford was not the biological father, Clifford sought and was granted de facto parent status. As a de facto parent, he again had no right to visitation, custody or reunification services and consequently no standing to seek review of the court's orders or lack thereof with regard to these services. At that point in time, reunification services were properly terminated as to Chantella. This is reflected in the new reunification scheme,

where both parents were given a plan to reunify with Anthony but only Rita was given a plan to reunify with Chantella. As a de facto parent, Clifford has no standing to challenge reunification or custody orders with regard to Chantella. Accordingly, his assertions of substantial compliance with the plan and unreasonableness of the services offered are irrelevant.

Clifford, in his reply brief, points out that as a de facto parent he is a full party to the proceeding—not merely an amicus curiae. He reiterates the important role a stepfather plays in maintaining familial bonds. He suggests there are numerous reasons why he should be accorded full "standing" and should be given full review on the merits.

First, he asserts that he is the only father Chantella has known. At the time of the dependency proceedings, both he and Rita believed Clifford was her biological father. After testing showed he was not, he promptly filed for de facto status. From this point on, he was referred to as "stepfather." Clifford says he has been taking care of Chantella since she was 18 days old. He is married to Rita, and has taken Chantella into his home and held her out as his child. He has drawn no distinction between Chantella and his own biological children. He provides the financial support and is primary care-taker for all the children—including Chantella. He urges he is the strongest kind of de facto parent since he is not an outsider, but rather is a person who is a member of the immediate family, who is related by marriage and who has taken care of the minor as his own child since birth. Clifford further notes that unlike the de facto parent in *In re Kieshia E.*, *supra*, 6 Cal.4th 68, he has been a party to the action from the beginning and did not perpetrate either physical or sexual abuse on the minor. He has done nothing to abandon the roles essential to a de facto parent.

We find commendable Clifford's efforts to treat all of the children alike, his assumption of the day-to-day care of the children, and his participation in the proceedings involving his stepchildren. However, the role Clifford has assumed is substantially the same as most, if not all, de facto parents. Typically, de facto parents take on the role of a parent by participating in a child's life and by providing physical and psychological support. That is how and why they sought and were designated as de facto parents.

It is the Legislature that determines which groups of persons may reunify when a child is removed from their custody. At this point, the Legislature has not included de facto parents as one of those groups. As a stepparent who has not formally adopted the minor, or as a de facto parent, Clifford has no right to request or to receive reunification services nor to complain about services that he believes were inadequate. As a result, he has no standing to

seek review of services that were sought and not provided, or that were provided and were purportedly unreasonable.

Clifford also contends because de facto status includes the right to seek appellate relief, in particular with regard to the question of custody, he too should have standing. In support of his assertion he cites *In re Joel H.* (1993) 19 Cal.App.4th 1185 [23 Cal.Rptr.2d 878], where the court found the custodial nonbiological parent had standing. While we do not dispute that de facto parents have a right to appellate review of certain issues, we conclude that the issues raised here regarding reunification services cannot be reviewed.

In *Joel H.*, custody of the minor siblings was with the great aunt, Diane L., who was never formally granted de facto parent status. After providing care for the children for more than three years, the possibility of Diane adopting them was being explored. The department, however, was concerned about Diane being an adoptive parent and shortly thereafter, due to allegations of physical abuse, the minors were permanently removed from the home. This was accomplished via a section 387 petition which provides for removal of a child from "the physical custody of a parent, guardian, relative or friend . . . ." Unlike Clifford's circumstance, which deals with the question of reunification services, the issue in *Joel H.* involved the removal of children from the custody of relatives.

When Diane appealed, the question of standing was raised. Although the Court of Appeal stated there is no record that Diane was ever given de facto parent status (*In re Joel H., supra*, 19 Cal.App.4th at p. 1193), it referred to her as a de facto parent, discussed the rights of de facto parents and ultimately expanded the scope of appeal for de facto parents to include any circumstance where the party is aggrieved. Previously, appeals had been limited to allegedly erroneous denial of de facto parent status or of one of the specified rights given to them. (Code Civ. Proc., § 902.) The court found Diane was aggrieved because the children were being removed permanently from her care. (*In re Joel H., supra*, 19 Cal.App.4th at p. 1196.) However, since the question was removal from custody in the context of a section 387 hearing, the opinion is of limited relevance here.

In contrast, here Clifford has formally acquired the status of de facto parent and the orders he is questioning do not involve removal of the child from his care; rather, they concern whether reunification services were reasonable and whether he substantially complied with them. Since he had no right to these services, he is not "aggrieved"; likewise because Rita, as the natural mother, could have sought review of the court's decision to hear the matter, Clifford again is not aggrieved.

Clifford further suggests that he is being denied due process if he cannot seek appellate (writ) review of these questions. He says there is "no sound reason to deny a person who has voluntarily assumed the obligations of parenthood . . . the same basic rights to due process a natural or legal parent possesses when the state intervenes to disrupt or destroy the family unit." (*James* v. *McLinden* (D.Conn. 1969) 341 F.Supp. 1233, 1235.) However, the California Supreme Court, when considering the issue of due process in treating de facto parents and natural or legal parents differently, has declined to hold that a de facto parent is the same as a parent or a guardian. (*In re B.G., supra,* 11 Cal.3d at p. 693, fn. 21.) De facto parents who have custody temporarily pending return of the child to his or her parents are significantly different from natural or legal parents who have custody permanently. We believe there is no due process violation in treating the two types of familial relationships differently. (See *In re Jamie G., supra,* 196 Cal.App.3d at pp. 680-685.)

■    Finally, Clifford suggests the Department is estopped from asserting he lacks standing because the Department failed to (1) oppose the grant of de facto status, (2) object to reunification services, and (3) object to his full litigation of issues regarding Chantella.

First, Clifford points out the Department did not object to his application for de facto status nor did it appeal when the court granted him that status. Thus, Clifford asserts, the issue is waived and the Department is estopped from arguing that he lacks standing. However, because the acquisition of de facto status did not confer standing on Clifford as to the issues raised here, it is unclear how the Department's failure to object relates to the question of standing.

Second, Clifford notes he was given a reunification plan, and he completed the requirements. Clifford further points out that while *In re Jody R.* (1990) 218 Cal.App.3d 1615 [267 Cal.Rptr. 746] held that a de facto parent is not entitled to reunification services, the Court of Appeal did not say that a de facto parent cannot receive those services nor that a de facto parent may not get review of the correctness of the trial court's proceedings. This is critical, he argues, because here the Department did not say he was not entitled to those services. By offering services, the Department gave him the expectation he could regain custody. However, the offer of services probably stemmed from Rita's suggestion Clifford might be the biological father. Certainly as soon as the court determined that Clifford was not the biological father, it discontinued services as to Chantella. From this it may be inferred that the Department would not have offered him services earlier had it been clear he was not the biological father.

Third, Clifford argues the Department is estopped because it did not object to his litigating whether the services were reasonable. At the time of the hearing, there were two cases before the court: one in which Clifford was the de facto stepparent as to Chantella, and one in which he was the biological parent for Anthony. As to Anthony, it was proper to litigate reasonable services; as to Chantella, it was not. However, the fact the Department did not object to the court hearing the information on services on behalf of one child and not the other does not support an estoppel.

## II.  *The Motion for Mistrial**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### DISPOSITION

The petition is dismissed as to the issues involving reunification services and denied as to the motion for mistrial.

Kremer, P. J., and Huffman, J., concurred.

---

*See footnote 1, *ante*, page 747.