37 Cal.Rptr.3d 6 (2005)
134 Cal.App.4th 1357
In re P.L., a Person Coming Under the Juvenile Court Law.
San Bernardino County Department of Children's Services, Plaintiff and Respondent,
v.
Shirley M., Objector and Appellant.
No. E037988.
Court of Appeal, Fourth District, Division Two.
November 18, 2005.
Michael D. Randall, under appointment by the Court of Appeal, for Objector and Appellant.
James P. Morris, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.
Sharon S. Rollo, under appointment by the Court of Appeal, Chatsworth, for Minor.

OPINION
McKINSTER, Acting P.J.
Shirley M. (hereafter appellant), formerly the foster mother of P.L. (hereafter the *7 child), appeals from an order of the dependency court removing the child from her home and placing the child in a prospective adoptive home. Finding that she is not aggrieved of the order, and therefore has no standing, we dismiss the appeal.

FACTS AND PROCEDURAL HISTORY
The child was born in October 2003. Her mother tested positive for methamphetamine. The child was not tested for drugs because the doctors were more interested in saving her life. The child had seizures and asphyxia, and stayed in neonatal intensive care for three weeks.
Mother only visited the child sporadically and spent her time "running the streets and using drugs." Mother could not be found when the child was ready for discharge from the hospital. The child was placed with appellant who was a foster mother of four other children who were siblings ranging in ages three to 17.
On November 6, 2003, a petition was filed on behalf of the child alleging that she came within the provisions of Welfare and Institutions Code, sections (b) and (g).[1]
A jurisdiction hearing was held on April 20, 2004. Mother was not present. The court found the petition true and declared the child to be a dependent of the court. Custody was removed from mother, and the child was placed ". . . in the care, custody, [and] control of the director of [the Department of Children's Services (hereafter DCS)]." The social worker was authorized to place the child in a concurrent planning home by informational packet.
On November 15, 2004, the court held a six-month review hearing. The court terminated reunification services and set the case for a selection and implementation hearing. (§ 366.26.) It was recommended that the child be freed for adoption.
DCS began the adoption assessment process for the child in anticipation of the selection and implementation hearing. Appellant had expressed some interest in adopting the child so DCS conducted an interview with her. Appellant expressed concern that her health might prevent her from being an appropriate adoptive parent. She was then 57 years old and recently had a hip replacement causing her to walk with a cane. She also had other health issues, such as asthma and arthritis. She stated that it might be better if the child was placed with a young, healthy two-parent family. DCS filed a report on February 5, 2005, stating appellant's views on adoption and stating that DCS was looking for another adoptive home for the child due to appellant's uncertainty about adopting.
A week after the first interview with appellant, DCS conducted another interview with appellant. DCS indicated that it was willing to go forward with assessing appellant as an adoptive parent. She stated that while she was bonded with the child, she had decided not to adopt the child because she felt "the child would do best in an adoptive two-parent home." Appellant was concerned about her health problems and stated that the child should be placed in another home. She did state that she would like to continue to be in the child's life as a surrogate grandmother.
In January 2005, DCS began searching for adoptive parents that would allow contact between the child and appellant. In February, a couple in their mid-to-late 20's *8 was found. They have a five-year-old son. By March 2005, the process had been completed, and the couple was informed that they were eligible to adopt.
On March 10, 2005, DCS met with the appellant to discuss the couple that had been approved to adopt. During that meeting appellant stated that she had changed her mind and now wished to adopt the child. She was told that the couple lived close by and was open to continuing visits with the child and appellant. Appellant stated that she feared, based on her prior experience with a another foster child, that she might not be allowed sufficient contact.
DCS decided to proceed with adoption with the couple. On March 15, 2005, the court continued the selection and implementation hearing for six months at the recommendation of DCS to provide additional time for the child to transition into the new home.
The following day, March 16, 2005, appellant filed a motion to be granted de facto parent status. A hearing on the motion was set for March 23, 2005. Between these two dates, daily visitations were scheduled between the child and the adoptive couple, but appellant refused to cooperate in facilitating visitation. At the hearing on the motion for de facto parent standing, DCS stipulated to granting that status, and the court granted the motion.
A placement review hearing was held on April 8, 2005. Appellant was represented by counsel. She now wanted to be assessed by DCS for adoption, and she was opposed to changing placement to the prospective adoptive couple. Appellant testified that she felt that she was manipulated by the social workers into declining to adopt during the adoption assessment interviews.
Appellant stated she planned to adopt the four other foster children in her care. She had considered adopting another of her foster children 10 years before, but she had not done so. At the end of the hearing the court found that DCS had not abused its discretion in seeking to place the child in the new adoptive home, and it found that the change was in the best interests of the child.
Appellant now appeals contending that the order for a change of placement is not supported by substantial evidence.

DISCUSSION
Appellant does not have standing to appeal the order because she is not aggrieved. Without standing there is no justiciable controversy for a court to entertain. To have standing, a person must have rights that may suffer injury. (Clifford S. v. Superior Court (1995) 38 Cal.App.4th 747, 751, 45 Cal.Rptr.2d 333.)
At the disposition hearing, legal custody was given to the director of DCS. The child was ordered physically maintained with appellant as foster mother subject to the court's supervisory powers based on the best interests of the child. (§ 361.2, subd. (e); In re Robert A. (1992) 4 Cal.App.4th 174, 189-190, 5 Cal.Rptr.2d 438.)
De facto parent status does not confer the rights of a parent or even a legal guardian. (In re B.G. (1974) 11 Cal.3d 679, 692, 693, fn. 21, 114 Cal.Rptr. 444, 523 P.2d 244; In re Kieshia E. (1993) 6 Cal.4th 68, 77-78, 23 Cal.Rptr.2d 775, 859 P.2d 1290.) De facto parents have limited rights that include: (1) the right to an attorney; (2) the right to be present at hearings; and (3) the right to present evidence and be heard. Specifically, they do not have the right to reunification services, custody, or visitation. (In re Kieshia E., at p. 82, 23 Cal.Rptr.2d 775, 859 P.2d 1290; *9 Clifford S. v. Superior Court, supra, 38 Cal.App.4th at p. 752, 45 Cal.Rptr.2d 333, italics added; Cal. Rules of Court, rule 1412(e).) While de facto parents are given an opportunity to participate in the proceedings, that status does not give them the rights accorded to a parent or legal guardian. (In re Cynthia C. (1997) 58 Cal.App.4th 1479, 1490-1491, 69 Cal.Rptr.2d 1; In re Crystal J. (2001) 92 Cal.App.4th 186, 191, 111 Cal.Rptr.2d 646.) Consequently, appellant has no legal standing to complain of the decision to place the child with the new prospective couple since she has no right to custody or continued placement as a mere de facto parent. The order changing physical custody was within the sound discretion of the court from which appellant cannot appeal because her legal rights were not impacted.
Even if we were to consider the merits of appellant's issue, we would find substantial evidence to support the court's findings and order. The court stated its concern regarding appellant's equivocation about adopting the child. Independent of any other concerns regarding appellant's age or health, her equivocation by itself, standing alone, is substantial evidence supporting the court's order. (Sheila S. v. Superior Court (2000) 84 Cal.App.4th 872, 880, 101 Cal.Rptr.2d 187.) Based on that factual determination, the court, therefore, did not abuse its discretion in making a change of placement to the new adoptive home. (In re Stephanie M. (1994) 7 Cal.4th 295, 318, 27 Cal.Rptr.2d 595, 867 P.2d 706.)

DISPOSITION
The appeal is dismissed.
We concur: RICHLI and GAUT, JJ.
NOTES
[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise indicated.