Filed 12/21/15  Metro Eight Properties v. Manrao CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| METRO EIGHT PROPERTIES, LLC, <br><br>     Plaintiff, Cross-defendant and Respondent, <br><br> v. <br><br> KENNETH S. MANRAO et al., <br><br>     Defendants, Cross-complainants and Appellants. | H040340 <br> (Santa Clara County <br> Super. Ct. No. CV210917) |

Following a court trial, judgment was entered in favor of respondent Metro Eight Properties, LLC (Metro Eight) and against appellants Kenneth S. Manrao and Rosemary Ann Manrao (hereafter collectively the Manraos) on Metro Eight's cause of action for breach of a sublease (Sublease).  The trial court found the Manraos had failed to properly maintain the structures on the sublet property as required under the Sublease.  The trial court awarded Metro Eight damages in the amount of $126,654, plus attorney fees and costs totaling $45,617.41.

On appeal, the Manraos, appearing in propia persona, raise the following arguments:  (1) Metro Eight did not have standing to sue; (2) the trial court erroneously found the Manraos did not have a right of first refusal to purchase the property under the master lease agreement; (3) the trial court erred in improperly awarding Metro Eight expenses associated with renovations to the buildings, rather than repairs; (4) Metro Eight's counsel improperly withheld evidence from the court; (5) Metro Eight's counsel

improperly communicated directly with the Manraos when they were represented by counsel; and (6) the Manraos were not timely provided copies of the court's tentative or amended decision and were thus deprived of the opportunity to provide necessary input.

We find no merit to any of their claims and will affirm the judgment.

## I.     FACTUAL AND PROCEDURAL BACKGROUND[1]

In June 1959, Metro Eight's predecessor-in-interest Lederer Properties, Inc. (Lederer), entered into a written ground lease with the trust of Martha Ingleson for property located at 1310 North First Street, San Jose, California (the Property). The term of the lease is for 98 years.

The same day, Lederer executed a written 52-year sublease (Sublease) with the Manraos' predecessor-in-interest, Ray B. Larson, Inc. (Larson). The Sublease was to expire on June 10, 2011.

### A.     Prior litigation

In 2006, Metro Eight filed a civil action against the Manraos seeking, among other things, an injunction prohibiting the Manraos from demolishing the buildings on the Property (the 2006 Action). Metro Eight also sought declaratory relief confirming it would own the buildings on the Property when the Sublease expired and that the Manraos

---

[1] Prior to filing their opening brief, the Manraos moved to augment the record in this case to include the following documents: (1) a grant deed dated April 26, 2007 transferring ownership of the Property to certain individuals as tenants-in-common; (2) a permit record for a "reroof" at the Property showing a permit date of August 17, 2011; (3) a building inspection notice permit dated September 14, 2011; and (4) a "chronology permit activity report" covering August 1, 2011 to August 31, 2011. The Manraos claimed in their motion that these documents had been "withheld by [Metro Eight]'s attorney" and "were not discovered until after [the] court proceeding had completed." Metro Eight opposed the motion, noting that none of the documents had been presented to the trial court and all of the documents were in the public record. By separate order dated August 25, 2014, we denied the motion in its entirety.

were obligated to maintain the buildings in good condition pending expiration of the Sublease.

Metro Eight brought a motion for summary adjudication in the 2006 Action which was granted in part and denied in part. The trial court ruled that Metro Eight was entitled to declaratory judgment that it would own the buildings in question at the end of the Sublease and also that the Manraos were obligated to "properly maintain all structures" on the Property. The trial court denied Metro Eight's request for a permanent injunction finding the Manraos had the right to demolish structures on the Property pursuant to the terms of the Sublease, and also finding there was a triable issue of fact as to whether the Manraos had "threatened irreparable harm." Judgment was entered on Metro Eight's declaratory relief claims and Metro Eight dismissed without prejudice its cause of action for a permanent injunction.

In March 2011, Metro Eight contacted the Manraos to facilitate transfer of the property when the Sublease expired on June 10 of that year. When it appeared the Manraos intended to remain in possession, Metro Eight filed a complaint for injunctive and declaratory relief (the 2011 Action) seeking an order requiring the Manraos to relinquish the property on termination of the Sublease.

The Manraos did turn over possession of the property on June 11, 2011, but at that time still owed past due rent. Metro Eight also believed the Manraos had failed to properly maintain the property as required under the Sublease. Accordingly, Metro Eight amended its complaint to state claims for breach of contract for unpaid rent and damages. After the parties settled their dispute over unpaid rent, Metro Eight dismissed its lawsuit, again without prejudice. Michael Myers testified Metro Eight was still investigating the condition of the property when it dismissed its lawsuit and had not yet determined the extent of damages caused by the Manraos' failure to maintain it.

*B.* *Operative pleadings*

Metro Eight filed the instant complaint for breach of contract on October 12, 2011. Metro Eight alleged that the Manraos breached their obligations under section 18 of the Sublease by "failing to maintain the buildings in good condition and repair and turn over the fixtures at the termination" of the Sublease. Specifically, the Manraos "failed to maintain the pool in good condition and removed fixtures consisting of the filter pumps . . . . [¶] . . . failed to maintain the roof of the building in good repair resulting in numerous water leaks and water damage to hotel rooms; and [¶] . . . failed to maintain the balcony of the building resulting in significant water damage to the balcony."

The Manraos answered the complaint and filed a cross-complaint against Metro Eight listing causes of action for breach of contract, declaratory relief and unfair business practices under Business and Professions Code sections 17200 et seq.

*C.* *Evidence presented at trial by Metro Eight*

*1.* *Section 18 of the Sublease*

In relevant part, section 18 of the Sublease provides: "The Lessee shall keep and maintain or cause to be kept and maintained, all buildings, improvements and appurtenances, which may at any time during the lease term be located upon the leased land, including, without limitation, all sidewalks, streets, alleys, parking areas, trees, landscaping and all improvements of said premises in good condition and repair and in a clean, attractive and sanitary condition."

*2.* *Michael Myers' testimony*

Myers, Metro Eight's managing member, testified about a variety of subjects relating to the Property, the prior litigation against the Manraos and his communications with Kenneth Manrao. Myers authenticated a series of work proposals Metro Eight obtained for repairs to the roof, the pool and the second-floor balcony. He also authenticated the checks written to the contractors who performed those repairs, the total amount of which was $126,654.

4

On cross-examination, Myers testified the design of the roof was not changed when it was replaced following the expiration of the Sublease. He also reiterated that Metro Eight was not aware the Property was in such a state of disrepair until the new tenant advised them of the problems "almost on the eve of the termination of the [Sub]lease."

### 3. Expert testimony

#### a. Steven Fisk's testimony

Fisk testified as an expert witness in "general construction with an emphasis on carpentry and the repair, including cost, of repair of walkways and decks." Fisk inspected the second-floor balcony in July 2011 and determined the waterproof elastomeric coating which had been applied to the walkways was failing, allowing water to intrude. According to Fisk, the elastomeric coating had to be pressure washed and reapplied every two to three years to prevent it from failing. Based on the damage Fisk observed to the underlying concrete and plywood, he believed the balcony had not been "maintained at all."

On cross-examination, Fisk said he would not expect this type of concrete damage, regardless of the age of the property, with a properly-applied waterproof membrane. In conducting his inspection of the balcony, Fisk admitted he was not provided any information or documentation regarding its state of repair from 10, 20 or 30 years ago.

Fisk prepared two bids for Metro Eight: one for a "partial repair" in the amount of $128,598.27 and the second for a "complete repair" in the amount of $179,852.16. However, Metro Eight did not retain his company to repair the balcony. When presented with an invoice in the amount of $23,750 for the balcony repair work that was actually done, Fisk testified that it was a reasonable charge for the work performed by that company.

5

### b. *Eugene Buick's testimony*

Buick, a civil engineer and chief operating officer at Allana Buick & Bers, testified as an expert in general construction "with an emphasis on the building envelope and waterproofing." Buick inspected the Property in late June 2011 and found the roof was in need of repair. In Buick's opinion, the roof had not been properly maintained and therefore needed replacement.

Buick testified the pool was closed "by the Health Department," and there was a "report of an electrical shock hazard." The pool and spa pumps had been removed and "generally the pool equipment area was unkept [*sic*] and not maintained."

### 4. *Kenneth Manrao's testimony*

Kenneth was called by Metro Eight during its case-in-chief. He testified, contrary to Myers' testimony, he did reach an agreement in 2006 with Metro Eight to purchase the motel, though no purchase agreement was ever signed. Rather, there were e-mails in which he agreed to pay 5 percent more than any offer Metro Eight received, which was calculated as $2.8 million. He delivered a deposit in the amount of $500,000 to William Joe, at Metro Eight's offices.

Kenneth further testified that, in April 2011, his attorney gave Metro Eight written notice of Kenneth's intent to demolish the motel. Kenneth obtained a bid from a demolition company in the amount of $85,000 to remove the motel. He did not proceed with his plan, however, because he claims Metro Eight advised him it would extend his lease for one year and give him the option to buy the Property if he did not go through with the demolition. Kenneth admitted he never signed a written agreement to that effect.

### D. *Evidence presented at trial by the Manraos*

### 1. *Rosemary Manrao's testimony*

Rosemary testified she and her husband were informed during the negotiations leading to them executing the Sublease, they would get a right of first refusal to purchase

6

the Property. On cross-examination, she admitted she never saw any writing from Metro Eight granting such a right.

When they took over the motel, there was a large leak in the roof of one building, which they repaired. They also had to replace the air conditioners on the Property, as well as drain the pool so that a new lining could be installed. While they operated the motel, she and her husband had it painted several times, "had numerous roof repairs done," upgraded the electrical system and renovated the rooms. Prior to the expiration of the Sublease, Metro Eight never made her or her husband aware of any maintenance concerns.

### 2. *Kenneth Manrao's testimony*

Kenneth testified he has numerous degrees including bachelors of science in physics and engineering, as well as an MBA. He is a "certified nuclear inspector" and registered professional engineer in California, Ohio and Pennsylvania. In the 1980s, he began to build hotels which he subsequently operated. Over the years, he built a total of six or nine hotels which he personally maintained, though he sometimes hired subcontractors and workers.

According to Kenneth, eight months before the Sublease expired, he retained a "certified roofer" to inspect and repair the roof. Metro Eight never came by to inspect the Property over the 18 to 20 year period he was operating the motel.

Regarding the pool, Kenneth testified he closed it for "10 months a year, nine months" because "there's a lot of prostitution and drug dealers all coalesce there, they end up in [*sic*] pool area."

Kenneth testified he was told by William Joe, on behalf of Metro Eight, that he had an option to buy the Property under the Master Lease and Sublease agreements. This meeting took place "seven or 10 days before closing of escrow" on the Sublease. He subsequently made several written offers to Metro Eight to purchase the motel and indicated he would pay 5 percent above any other offer they received.

7

*E.      Statement of decision*

Following the close of evidence and after the parties submitted their closing briefs, the trial court issued a tentative statement of decision on July 15, 2013, which was subsequently adopted as the final statement of decision on October 8, 2013, after neither side objected.

The trial court, citing the testimony provided by Fisk and Buick, found the Manraos breached the Sublease by failing to maintain the roof, the balcony and the pool. Though the Manraos testified they performed maintenance during their tenancy, "the only evidence purporting to document maintenance of any kind was a single roof repair proposal for leaks over rooms 221 and 222 amounting to $975.00." The trial court found that Metro Eight proved damages totaling $126,654 by way of invoices and checks.

The court expressly rejected the Manraos' contention that Metro Eight sought recovery for "renovation" instead of repair because it changed "the form of the roof . . . from a flat roof to a pitched roof," finding the "pitched-roof carport area the Manraos reference in their initial closing brief was not included in the invoices that serve as Metro Eight's basis for the roof portion of its damages. . . . Thus, Metro Eight does not seek recovery for renovations, but limits the recovery sought to the repairs made to the flat roof for damages resulting from failure to maintain the structure."

The trial court next discussed how the Manraos failed to prove any of the 25 affirmative defenses raised in their answer, including their defense that they "had a right of first refusal pursuant to the Sublease." The court found that the Manraos failed to present any persuasive evidence they had such a right. Further, the Manraos' testimony they "consistently offered to pay Metro Eight five percent (5%) over any offer it received for the Property" was "not consistent with a contractual right of first refusal."

Turning to the Manraos' cross-complaint, the trial court found the Manraos had failed to prove any of the three causes of action[2] set forth in that pleading.

## II. DISCUSSION

### A. *Standing to sue*

From what we can discern from their opening brief, the Manraos' first argument is that Metro Eight does not have standing to sue because it was not the record owner of the Property.[3]

"[A] plaintiff who lacks standing cannot state a valid cause of action; therefore, a contention based on a plaintiff's lack of standing cannot be waived under Code of Civil Procedure section 430.80 and may be raised at any time in the proceeding." (*McKinny v. Board of Trustees* (1982) 31 Cal.3d 79, 90.) " 'Typically, . . . the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.' [Citation.] In other words, whether one has standing in a particular case generally

---

[2] The cross-complaint alleged the following causes of action: (1) breach of the Sublease; (2) declaratory relief; and (3) unfair business practices under Business and Profession Code section 17200 et seq.

[3] On December 10, 2015, five days before oral argument, the Manraos filed a motion requesting this court to take judicial notice of two documents: (1) a certificate of status from the California Secretary of State indicating that Metro Eight's powers, rights, and privileges had been forfeited on February 25, 2015 and remain forfeited as of December 8, 2015; and (2) a printout of a page from the Delaware Division of Corporations' Web site, purporting to show that Metro Eight is no longer in "good standing" as of June 1, 2015. We grant the request as to the first document as a certified record of an official act, but deny the request as to the second document as it is not certified in any way. (Evid. Code, §§ 452, subd. (c), 459.) It is undisputed Metro Eight was in good standing at the time it obtained the judgment below and therefore its current status has no bearing on our examination of whether that judgment should be affirmed or reversed.

Also on December 14, 2015, Metro Eight moved to continue the December 15 oral argument in order to secure confirmation from the California Secretary of State that its legal rights have been revived. We denied the motion.

9

revolves around the question whether that person has rights that may suffer some injury, actual or threatened." (*Clifford S. v. Superior Court* (1995) 38 Cal.App.4th 747, 751.)

Looking at the allegations of the complaint, Metro Eight alleged it was "the successor-in-interest to the Lease and . . . the Sublessor" to the Manraos. The complaint further alleges the Manraos breached their obligation under section 18 of the Sublease to maintain "all buildings, improvements, and fixtures in good condition and repair . . . throughout the term of the Sublease." At trial, Metro Eight presented evidence supporting its allegations, and the Manraos submitted no evidence to counter the allegation that Metro Eight was not the sublessor. Myers testified Metro Eight was the successor-in-interest to the original lessee. Kenneth himself testified that Metro Eight was the "landlord for [the] Sublease." As the Sublessor, Metro Eight had rights under the Sublease which suffered actual injury as a consequence of the Manraos' failure to maintain the Property. Accordingly, we reject the Manraos' argument that Metro Eight did not have standing to bring its action for breach of contract against them.

B.      *Right of first refusal*

Next, the Manraos argue the Sublease and Master Lease were "merged" when certain individuals, who were also partners in Metro Eight, purchased the Property in 2007. Accordingly, the Manraos should have been considered the tenants under the Master Lease rather than the subtenants under the Sublease, which would give them the right of first refusal to purchase the Property.

As we have frequently stressed, "to be successful on appeal, an appellant must be able to affirmatively demonstrate error on the record before the court. ' " 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)' (*In re Marriage of Bower* (2002) 96

10

Cal.App.4th 893, 898.)" (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822.)  Since it is the appellant's burden to show error, the Manraos' failure to provide an adequate record on an issue requires that the issue be resolved against them. (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.)

The Manraos cite nothing from the appellate record, such as deeds of trust or other indicia showing who held title to the Property, to support their theory.  The Manraos also cite no authority for the proposition that ownership of property by members of an LLC (limited liability company), in their individual capacity, has *any* effect on a sublease between the LLC and a sublessee, let alone that such ownership would operate to convert the sublessee into the lessee under a lease agreement that the sublessee never executed. This theory was not, as far as we can discern, ever proffered at trial.  Instead, the Manraos argued that they were told, during their negotiations with Metro Eight in 1990 relating to signing the Sublease, that they had an "option to buy" the Property.  Having apparently failed to convince the trial court that any such representations were made, the Manraos offer a new theory of how they came to acquire a right of first refusal.  This is improper.  (*Cinnamon Square Shopping Center v. Meadowlark Enterprises* (1994) 24 Cal.App.4th 1837, 1844 (*Cinnamon Square*) [an appellant cannot change theory of recovery or relief on appeal].)

C.      *Evidence establishing damages*

The Manraos next argue the damages claimed by Metro Eight were for "major additions and renovations . . . not repairs" and that neither the contractors who performed the work or the landlord testified at trial about the claimed repairs.

We construe this argument as a challenge to the trial court's resolution of a disputed factual question and thus apply the substantial evidence rule.  Accordingly, we review the record below, and draw any reasonable inferences therefrom, in the light most favorable to the judgment.  (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1053.)  If the record contains substantial evidence to support the judgment, it will be upheld.

11

(*Ibid.*)  Because we do not reweigh the evidence, we will uphold a judgment that is supported by substantial evidence, even if substantial evidence to the contrary also exists. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.)

"Substantial" refers to the quality, not quantity, of the evidence.  (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.)  The evidence must be of ponderable legal significance rather than just "any" evidence (*ibid.*) and must be reasonable in nature, credible, and of solid value.  (*DiMartino v. City of Orinda* (2000) 80 Cal.App.4th 329, 336.)  The testimony of a single witness may constitute substantial evidence.  (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.)

Following the close of evidence, the trial court issued a statement of decision in which it found that Metro Eight proved damages totaling $126,654 for repairs by way of invoices and checks which had been authenticated by Myers.  The trial court noted that Metro Eight's expert, Buick, reviewed the invoices for the repair work performed at the Property, including the roof, two rooms damaged by water intrusion, as well as the pool, and testified the amounts expended were reasonable in his opinion.  The trial court also noted that another of Metro Eight's experts, Fisk, reviewed the invoice for the repairs done on the balcony/walkway and testified those repairs were warranted and the cost of repair was reasonable.  The Manraos had every opportunity to cross-examine those witnesses on the repair work done, and could have presented experts of their own though they apparently chose not to.

In its statement of decision, the trial court expressly rejected the Manraos' argument that Metro Eight sought recovery for a "renovation," relying on Buick's testimony, as well as the invoices, that the flat roof of the motel was replaced with another flat roof.  The trial court found that the non-flat "pitched" roof which the Manraos claimed was improperly included in Metro Eight's claim for damages was, in fact, not included that claim.

12

In short, substantial evidence supports the trial court's award of $126,654 in damages to Metro Eight incurred due to the Manraos' failure to maintain the Property.

### D. *Claim of withheld evidence*

The Manraos next argue "[Metro Eight]'s attorney was aware [*sic*] and in possession of information during the time of the proceedings being held as to the actual ownership of the land as well as permits and plans indicating renovations, and not repairs to the building as stated in court." The failure to disclose this information meant the Manraos' attorney could not review it or call necessary witnesses at trial which would have provided the court "true and actual statements of the issues in question."

There is no merit to this claim. Most of the information which the Manraos assert was withheld consists of either publicly available information or materials which were readily available to the Manraos themselves. For example, the Manraos argue Metro Eight submitted into evidence the trial court's January 17, 2008 order on Metro Eight's motion for summary adjudication brought in the 2006 Action, but failed to also introduce the "material facts" or Kenneth's declaration referenced in that order. Since the Manraos were defendants in the 2006 Action, these documents were, or should have been, equally available to them. The Manraos offer no explanation why they failed to offer this evidence at trial themselves, if it was so important to their affirmative defenses or the causes of action asserted in their cross-complaint.

Similarly, information regarding the "true ownership of the land," not to mention the "permits and plans" relating to work on the motel was a matter of public record. If the Manraos truly believed these materials were relevant to their defense or to the claims asserted in their cross-complaint, they were free to introduce them at trial themselves. They make no claim they were in any way misled by Metro Eight regarding ownership of the real property or the scope of the repair work, let alone that they were precluded from obtaining this evidence from the government agencies responsible for maintaining these records.

13

E.     *Other claims*

Finally, the Manraos raise several other claims in their briefs which can be summarily addressed.  First, the Manraos assert that certain items of personal property, specifically:  (1) the motel structure; (2) the sign for the motel; (3) furniture, supplies and equipment; (4) money for accounts receivables; and (5) the phone system and property management system, were improperly retained by the landlord.  However, the Manraos did not state a cause of action for conversion in their cross-complaint and never sought damages from Metro Eight for this supposed wrongdoing.  This issue was not presented to the trial court for decision and it is improper to raise it for the first time on appeal. (*Cinnamon Square*, *supra*, 24 Cal.App.4th at p. 1844.)

Second, the Manraos accuse Metro Eight's counsel of unprofessional conduct, including communicating with them while they were represented by counsel and misleading the trial court by withholding material evidence.  As we have already disposed of the Manraos' argument that Metro Eight withheld evidence, we turn to their accusation of improper communication.  The Manraos cite one of the exhibits introduced at trial, namely an e-mail from Metro Eight's counsel to Kenneth dated September 21, 2011.  The e-mail provides, in its entirety, as follows:  "Mr. Manrao, [¶] Once my client confirms that your checks have cleared, we will file the dismissal with the court. [¶] David Kornbluh."  The Manraos neglect to mention, however, that this e-mail was sent *in response to* an e-mail from Kenneth to Metro Eight's counsel inquiring about dismissal of the 2011 Action.  In addition, the header of the e-mail from Metro Eight's counsel shows that it was sent not just to Kenneth but to Kenneth's attorney as well.  Assuming that there was anything unprofessional about Metro Eight's counsel responding directly to an e-mail from Kenneth, copying his attorney, the claim fails because the Manraos make no showing that they were prejudiced by this conduct.  In addition, like their claim that Metro Eight or perhaps the landlord improperly retained some of their personal

14

property, this issue was never raised before the trial court and is forfeited on appeal. (*Cinnamon Square*, *supra*, 24 Cal.App.4th at p. 1844.)

Finally, the Manraos argue that neither they nor their attorney received copies of "the Proposed Amended Decision or a Copy [*sic*] Amended Decision" until after judgment was entered in this case. However, the record includes copies of the trial court's proofs of service on the Manraos' counsel for the tentative decision and proposed judgment, the decision and judgment, the amended decision and judgment as well as notice of entry of judgment. In their reply brief, the Manraos assert that their attorney "had moved his office to Sacramento and the paperwork was mailed to his old address resulting in delays of mail delivery." We fail to see how Metro Eight or the trial court could be held accountable for the failure of the Manraos' attorney to notify them of his change of address.

III.    **DISPOSITION**

The judgment is affirmed.

_____
                        Premo, J.

WE CONCUR:



_____
          Rushing, P.J.



_____
          Elia, J.