Filed 12/14/22  In re E.H. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re E.H., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E078884 |
| Plaintiff and Respondent, | (Super.Ct.No. J290056) |
| v. | OPINION |
| J.H.,<br>      Defendant; | |
| KARLA P. et al., | |
| Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Dismissed in part, reversed in part, and remanded with directions.

Roni Keller, under appointment by the Court of Appeal, for Appellants.

Tom Bunton, County Counsel, and Svetlana Kauper, Deputy County Counsel, for Plaintiff and Respondent.

1

Karla P. and David P., the former foster parents of E.H., appeal from the juvenile court's denial of their request for de facto parent status. We agree that the request for de facto parent status should have been granted, and we accordingly reverse. De facto parent status, however, does not confer any right to the continued custody of the child and does not give Karla and David standing to challenge the removal of E.H. from their home for placement with his sibling. We therefore dismiss Karla and David's appeal from the court's placement order.

## BACKGROUND

E.H. was only a few days old when he was placed in foster care with Karla and David P. on August 2, 2021. Karla and David filed a de facto parent request on February 7, 2022. According to their statement, E.H. had tested positive for methamphetamine at birth, had special needs, and required a lot of attention and care. Karla and David cared for E.H. 24 hours a day, seven days a week, feeding, talking, playing, kissing, reading, and providing for all of his physical and psychological needs. In addition, they met all of his special needs, taking him to physical therapy, speech therapy, behavioral therapy, and massage therapy for stiff muscles, and assisting with his difficulties regulating his emotions and appetite. They cared for E.H. with love, feeling in their hearts that he was their baby.

The juvenile court set the request for de facto parent status for hearing on April 4, 2022, to coincide with the court's further hearing pursuant to Welfare and Institutions Code section 366.26.  (Unlabeled statutory citations refer to this code.)

At the hearing, Karla addressed the court, stating that she and David had been told when they picked up E.H. from the hospital that he had been abandoned and they would have an opportunity to adopt him.  She said that social workers who had visited their home also confirmed they would have an opportunity to adopt E.H., which was what they wanted and had stated since day one.  Karla also stated that she and David had filed grievances with San Bernardino County Children and Family Services (CFS) on February 3 and February 8, 2022, seeking to preserve E.H.'s placement in their home.  Those grievances were not heard because, according to county counsel, the juvenile court on February 10, 2022, authorized E.H.'s removal from Karla and David's home for placement in the foster home where E.H.'s older biological sibling had previously been placed.  On March 1, 2022, pursuant to the court's February 10 order, E.H. was placed in the foster home where his sibling was already living.  County counsel also stated that contrary to Karla and David's understanding, E.H. had not been abandoned, this was not a "safe surrender" case, and CFS's plan had always been to place E.H. with his sibling so they could be adopted together.

The juvenile court acknowledged that Karla and David had "assumed the role of parents on a day-to-day basis" from the time E.H. was placed in their care on August 2, 2021, until he was removed on March 1, 2022.  But the court did not find that they

3

"possess information about the child that is unique from other participants in the process," and the court also noted that "it does not appear" that they "have regularly attended" the hearings in E.H.'s case. The court then denied the request for de facto parent status on the basis of "the Court's finding that it's in the best interest that [E.H.] remain in the home with a sibling, and the Court does not want to sever the sibling relationship or sibling bond that [E.H.] may have." The court further found that E.H.'s current placement with his sibling was in the child's best interest, and the court granted CFS's request for a 90-day continuance to allow the placement to stabilize before considering termination of parental rights.

## DISCUSSION

Karla and David argue that the juvenile court abused its discretion by denying their request for de facto parent status, and they also argue that the court erred by authorizing removal of E.H. from their custody. An applicant seeking de facto parent status has standing to appeal the denial of the application (*In re Rachael C.* (1991) 235 Cal.App.3d 1445, 1454-1455, disapproved on another ground in *In re Kieshia E.* (1993) 6 Cal.4th 68, 80), and we agree with Karla and David that they should have been granted de facto parent status. But even as de facto parents they lack standing to challenge the juvenile court's placement decisions, so we dismiss their appeal as to that portion of the juvenile court's order.

4

"The concept of de facto parent has been judicially created to recognize limited rights in dependency cases for a person who has been found by the juvenile court to have assumed, on a day-to-day basis, the role of a parent, fulfilling the child's physical and psychological needs.  [Citations.]  The decision to grant de facto parent status depends on an assessment of the particular individual and the facts of the case.  [Citation.]  The juvenile court applies the preponderance of the evidence standard in making its factual findings and we review those findings for an abuse of discretion.  [Citation.]"  (*In re Leticia S.* (2001) 92 Cal.App.4th 378, 381 (*Leticia S.*).)  "Designating a person as a de facto parent gives that person 'procedural rights' in the ongoing dependency proceedings, such as the right to be present at hearings, to be heard and to retain counsel, but de facto parent status does not grant the person any substantive rights to 'reunification services, . . . custody, [or] continued placement of the child.'"  (*In re Brianna S.* (2021) 60 Cal.App.5th 303, 314, italics omitted; see Cal. Rules of Court, rule 5.534(a).)  "De facto parent status is ordinarily liberally granted on the theory that a court only benefits from having all relevant information on the best interests of the child."  (*In re Bryan D.* (2011) 199 Cal.App.4th 127, 141 (*Bryan D.*).)

Rule 5.502(10) of the California Rules of Court defines a de facto parent as "a person who has been found by the court to have assumed, on a day-to-day basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period."  (See *In re B.G.* (1974) 11 Cal.3d 679, 692, fn. 18 ["We use the term 'de facto parent' to refer to that

5

person who, on a day-to-day basis, assumes the role of parent, seeking to fulfill both the child's physical needs and his psychological need for affection and care."].) In addition, "[t]he factors courts generally consider for determining de facto parent status include 'whether (1) the child is "psychologically bonded" to the adult; (2) the adult has assumed the role of a parent on a day-to-day basis for a substantial period of time; (3) the adult possesses information about the child unique from other participants in the process; (4) the adult has regularly attended juvenile court hearings; and (5) a future proceeding may result in an order permanently foreclosing any future contact [between the adult and the child.]'" (*Bryan D.*, *supra*, 199 Cal.App.4th at p. 141.)

The undisputed evidence established that Karla and David had assumed the role of parents to E.H. on a day-to-day basis for the first seven months of his life, meeting all of his physical and psychological needs for care and affection. The juvenile court acknowledged as much, stating that Karla and David "have assumed the role of parents on a day-to-day basis for a period of time beginning August 2nd, 2021 to the [March 1, 2022,] date of removal." It is therefore undisputed that Karla and David met the definition of de facto parent in rule 5.502(10) of the California Rules of Court.

Consideration of the other factors likewise supports Karla and David's request for de facto parent status. Because they cared for E.H. for the first seven months of his life and met all of his physical and psychological needs, E.H. would ordinarily be psychologically bonded to them. The record contains no contrary evidence. As the caretakers who met all of E.H.'s daily needs, Karla and David would also possess

6

unique information about him and his needs. (See *In re Ashley P.* (1998) 62 Cal.App.4th 23, 27 ["As their caretaker, appellant had special information about the children."].) Although the juvenile court did not find that Karla and David "possess information about the child that is unique from other participants in the process," the court did not explain the basis for that determination, and the record contains no evidence to support it. It is also undisputed that a future proceeding may result in an order permanently foreclosing any future contact with E.H.

The only factor weighing against Karla and David's request was that, according to the juvenile court, they apparently had not regularly attended court hearings. But Karla and David had no right to attend those hearings. (§ 346.) That is a right they would gain only if they were granted de facto parent status. Given that they met the definition in the California Rules of Court and that every other factor weighed in their favor, it would be unreasonable to deny their request solely because they failed to exercise a right they did not yet have.

The only other consideration on which the juvenile court relied was the finding that it was in E.H.'s best interest to be placed with his sibling. That consideration is irrelevant for two reasons. First, the de facto parent request is independent of the court's placement decisions—the court could grant the request and still place E.H. with his sibling. Indeed, a prior caretaker who is concededly unable to care for the child may still be entitled to de facto parent status. (*In re Vincent C.* (1997) 53 Cal.App.4th 1347, 1358.) Second, when ruling on a de facto parent request, "the court does not consider

whether the order would be . . . in [the child's] best interests." (*Leticia S.*, *supra*, 92 Cal.App.4th at p. 383, fn. 5.)

For all of these reasons, we conclude that the juvenile court abused its discretion when it denied the de facto parent request. Karla and David undisputedly met the definition of de facto parent, and the other factors overwhelmingly weighed in their favor.

We do not, however, address Karla and David's argument that the juvenile court erred in continuing E.H. in the concurrent placement with his sibling rather than returning him to their care. While de facto parents are granted certain procedural rights, including the right to be present at juvenile court hearings, to be "represented by retained counsel or, at the discretion of the court, by appointed counsel," and to present evidence (Cal. Rules of Court, rule 5.534(a)), they do not have any cognizable interest in the child's custody or placement. (*In re B.S.* (2021) 65 Cal.App.5th 888, 895.) As this court held in *In re P.L.*, de facto parents lack standing to contest the juvenile court's placement decisions. (*In re P.L.* (2005) 134 Cal.App.4th 1357, 1361.) The juvenile court's orders authorizing the removal of E.H. from Karla and David's home and continuing the child's placement in the foster home where his sibling had been placed do not impact Karla and David's rights, even as de facto parents. We accordingly dismiss their appeal from the court's placement order.

8

## DISPOSITION

The order denying the request by Karla and David P. for de facto parent status is reversed with instructions to enter a new order granting de facto parent status to appellants.  In all other respects, the appeal is dismissed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ

J.

We concur:

RAMIREZ

P. J.

McKINSTER

J.

9